■ JOSEPH PHAIR et al., Appellants, et al., Plaintiff, v SAND LAND CORPORATION, Respondent. [28 NYS3d 400]—

In an action, inter alia, pursuant to Town Law § 268 (2) for injunctive relief, the plaintiffs Joseph Phair, Margot Gilman, and Amelia Doggwiler appeal, as limited by their brief, from so much of an order of the Supreme Court, Suffolk County (Molia, J.), entered April 22, 2013, as granted those branches of the defendant's motion which were pursuant to CPLR 3211 (a) to dismiss, as academic, the first and second causes of action except insofar as those causes of action sought to enjoin the defendant from using the subject property for the receipt of "land-clearing debris, including trees, brush, stumps, and leaves."

Ordered that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the defendant's motion which were pursuant to CPLR 3211 (a) to dismiss, as academic, the first and second causes of action except insofar as those causes of action sought to enjoin the defendant from using the subject property for the receipt of "land-clearing debris, including trees, brush, stumps and leaves," are denied.

The issues in the parties' dispute are being litigated in this action for, among other things, injunctive relief, and also in a special proceeding under CPLR article 78 (*see Matter of Sand*

*Land Corp. v Zoning Bd. of Appeals of Town of Southampton,* 137 AD3d 1289 [2016] [decided herewith]).

The plaintiffs in this action are resident taxpayers of the Town of Southampton. In 2005, they commenced this action, inter alia, to enjoin the defendant, Sand Land Corporation (hereinafter Sand Land), pursuant to Town Law § 268 (2) and the common law, from certain uses of its property. The plaintiffs allege that certain current uses of the property, which is located in a residential district, violate the Town's zoning code. Specifically, in the first and second causes of action, the plaintiffs sought to enjoin Sand Land from using its property for, inter alia, the annual receipt of "thousands of tons" of clearing debris, including trees, brush, stumps, and leaves; the processing of such clearing debris into topsoil and mulch; the storage, sale, and delivery of mulch, topsoil, and wood chips; and the receipt, processing, and/or disposal of concrete, demolition debris, asphalt pavement, brick, rock, and metals.

After this action was commenced, Sand Land filed an application with the Town's Chief Building Inspector requesting a "pre-existing certificate of occupancy" for the use of the property for: (1) the operation of a sand mine, (2) the receipt and processing of trees, brush, leaves and other clearing debris into topsoil or mulch, (3) the receipt and processing of concrete, asphalt pavement, brick, rock, and stone into a concrete blend, and (4) the storage, sale, and delivery from the property of sand, mulch, topsoil, wood chips, and concrete blend. In its application, which was filed in May 2010, Sand Land asserted, inter alia, that the property had been used continually for these operations since before the Town adopted its zoning code, and, therefore, that they constituted legal preexisting nonconforming uses. The plaintiffs opposed Sand Land's application.

In a determination dated July 18, 2011, the Town's Chief Building Inspector found that Sand Land was entitled to a preexisting certificate of occupancy for: "(i) the operation of a sand mine, (ii) the receipt and processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and (iii) the storage, sale, and delivery of sand, mulch, topsoil, and wood chips." The Chief Building Inspector also concluded, however, that Sand Land was not entitled to a preexisting certificate of occupancy "[a]s it relates to the receipt and processing of concrete, asphalt pavement, brick, rock, and stone into concrete blend." The following day, the Chief Building Inspector issued a certificate of occupancy certifying the preexisting use of the property for "[t]he operation of a sand

mine, the receipt and processing of trees, brush, stumps, leaves and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of sand, mulch, topsoil, and wood chips."

The plaintiffs—but not Sand Land—appealed to the Town's Zoning Board of Appeals (hereinafter the ZBA). The plaintiffs argued that the evidence Sand Land had submitted to the Chief Building Inspector did not support the Chief Building Inspector's finding of "pre-existing use status" with respect to receipt and processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of sand, mulch, topsoil, and wood chips.

Before the public hearing commenced on the plaintiffs' appeal to the ZBA, Sand Land moved in this action to dismiss the plaintiffs' first and second causes of action pursuant to CPLR 3211 (a) (1), (2), (3), (7) and (10). In its motion to dismiss, Sand Land argued that these causes of action had been "rendered moot" by the Chief Building Inspector's determination and the issuance of the preexisting use certificate of occupancy. The plaintiffs opposed Sand Land's motion and asked the Supreme Court to withhold consideration of the motion until the ZBA ruled on their appeal of the Chief Building Inspector's determination.

The public hearing on that appeal commenced in November 2011, and the ZBA decided the appeal in June 2012. In its determination dated June 21, 2012, the ZBA concluded that Sand Land's evidence supported the Chief Building Inspector's findings that the operation of a sand mine, including the storage, sale, and delivery of sand, constituted a legal preexisting nonconforming use, and that the receipt of trees, brush, stumps, leaves, and other clearing debris was a preexisting accessory use to the mining operation on the property. The ZBA also concluded, however, that the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of mulch, topsoil, and wood chips were not preexisting uses and were not permitted expansions of any legally established nonconforming use. In light of these determinations, the ZBA annulled those portions of the Chief Building Inspector's determination and certificate of occupancy which approved such "new uses" as preexisting.

Sand Land and the company that operated the mining and reclamation business on Sand Land's property commenced a CPLR article 78 proceeding challenging the ZBA's determination. Sand Land argued, among other things, that it was irrational, arbitrary, an abuse of discretion, and internally inconsistent for the ZBA to conclude that the same evidence

which established that the property could "receive" brush, trees, stumps, leaves, and other clearing debris did not also establish that these materials, once on the property, could be "processed" or sold.

In April 2013, while Sand Land's CPLR article 78 challenge to the ZBA's determination was pending, the Supreme Court granted Sand Land's motion to dismiss the first and second causes of action. In granting the motion, the court concluded that the ZBA's determination had rendered the plaintiffs' claims for injunctive relief moot. The court also stated that the CPLR article 78 proceeding was the proper forum for a challenge to the ZBA's determination. In the appeal before us, the plaintiffs seek to reverse the order granting those branches of Sand Land's motion which were to dismiss, as academic, their first two causes of action; the only limitation on the plaintiffs' request for relief in this Court is that the plaintiffs do not seek reinstatement of those causes of action to the extent that they had sought to enjoin the defendant from using the subject property for the receipt of "land-clearing debris, including trees, brush, stumps, and leaves."

Notably, during the pendency of this appeal, the Supreme Court, in the CPLR article 78 proceeding, granted Sand Land's petition, in part. Specifically, in a judgment dated June 10, 2014, the court annulled the ZBA's June 21, 2012, determination insofar as the ZBA found that the processing of brush, trees, stumps, leaves, and other clearing debris, and the sale of topsoil, mulch, and wood were not legal preexisting nonconforming uses. The court reinstated the Chief Building Inspector's certificate of occupancy in its entirety. The ZBA and the plaintiffs separately appealed from the Supreme Court's judgment in the CPLR article 78 proceeding (see Matter of Sand Land Corp. v Zoning Bd. of Appeals of the Town of Southampton, 137 AD3d 1289 [2016] [decided herewith]).

In our disposition of the appeal in the CPLR article 78 proceeding, we are reversing the judgment dated June 10, 2014, denying Sand Land's petition, confirming the ZBA's June 21, 2012, determination, and dismissing the CPLR article 78 proceeding on the merits (see Matter of Sand Land Corp. v Zoning Bd. of Appeals of the Town of Southampton, 137 AD3d 1289 [2016] [decided herewith]). Among other things, we have concluded that the ZBA's determination—namely, that the use of the property for the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and for the storage, sale, and delivery of mulch, topsoil, and wood chips constituted an impermissible expansion and alteration of the

legal nonconforming use of the property as a sand and gravel mine—was not illegal, arbitrary and capricious, or an abuse of discretion. In light of, among other things, our disposition of that appeal, we now reverse—except insofar as the plaintiffs have limited their appeal—the order entered April 15, 2015, which dismissed, as academic, the plaintiffs' first and second causes of action.

With respect to the first cause of action, Town Law § 268 (2) permits a town to "institute any appropriate action or proceedings" to "restrain, correct or abate" a violation of its zoning ordinance, or to prevent any illegal uses of land. In the event that "the proper local officer, board or body of the town" fails or refuses "to institute any such appropriate action or proceeding for a period of ten days after written request by a resident taxpayer of the town so to proceed, any three taxpayers of the town residing in the district wherein such violation exists, who are jointly or severally aggrieved by such violation, may institute such appropriate action or proceeding in like manner as such local officer, board or body of the town is authorized to do" (Town Law § 268 [2]; *see Phair v Sand Land Corp.*, 56 AD3d 449, 450 [2008]). The statute was "intended to create an avenue for direct action by which resident taxpayers, acting in concert, may overcome official lassitude or nonfeasance in the enforcement of zoning laws" (*Little Joseph Realty v Town of Babylon*, 41 NY2d 738, 741 [1977]). " '[I]n a taxpayer's action to enforce compliance with the zoning law upon failure of the town officers to do so, the taxpayer plaintiffs have no greater right to demand compliance than do the town officials' " (*Marlowe v Elmwood, Inc.*, 12 AD3d 742, 744 [2004], quoting *Forget v Raymer*, 65 AD2d 953, 954 [1978] [emphasis omitted]).

Here, the ZBA determined, and we confirmed (*see Matter of Sand Land Corp. v Zoning Bd. of Appeals of Town of Southampton*, 137 AD3d 1289 [2016] [decided herewith]), inter alia, that the use of the subject property for the operation of a sand mine, including the storage, sale, and delivery of sand, constituted a legal preexisting nonconforming use, and also that the use of the property for the *receipt* of trees, brush, stumps, leaves, and other land-clearing debris was a preexisting accessory use to the mining operation. As the plaintiffs now acknowledge, at least with respect to these specific uses, since the local officials found no zoning violation, there is no " 'official lassitude or nonfeasance in the enforcement of zoning laws' which citizen taxpayers may overcome" and no action pursuant to Town Law § 268 (2) can be maintained (*Marlowe v Elmwood, Inc.*, 12 AD3d at 744, quoting *Little Joseph Realty v Town of Babylon*, 41 NY2d at 741).

By contrast, however, the ZBA made no such "legal pre-existing nonconforming use" finding with regard to the use of the property for the *processing* of trees, brush, stumps, leaves, and other land-clearing debris into topsoil or mulch, or for the storage, sale, and delivery of mulch, topsoil, and wood chips. Moreover, although the issue was not before the ZBA, the Chief Building Inspector also refused to grant preexisting use status with regard to the use of the property for the receipt, processing, and/or disposal of concrete, demolition debris, asphalt pavement, brick, rock, and metals. Since there was no finding by the zoning officials that these uses were legal, there is no reason why either the Town or the citizen taxpayers cannot seek to enforce compliance with the zoning code in an action brought pursuant to Town Law § 268 (2) (*cf. Marlowe v Elmwood, Inc.*, 12 AD3d at 744; *Forget v Raymer*, 65 AD2d at 954). Accordingly, the first cause of action is not academic insofar as it relates to the use of the property for the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil and mulch, the storage, sale, and delivery of mulch, topsoil, and wood chips, and the receipt, processing, and/or disposal of concrete, demolition debris, asphalt pavement, brick, rock, and metals.

Similarly, the second cause of action is not academic insofar as it relates to such uses. In general, private property owners may maintain a common-law action to enjoin the continuance of a zoning code violation and to obtain damages to vindicate their discrete, separate, and identifiable interests as long as they can establish special damages due to the defendant's activities (*see Little Joseph Realty v Town of Babylon*, 41 NY2d at 741-742; *Town of N. Elba v Grimditch*, 131 AD3d 150, 155 [2015]; *Nemeth v K-Tooling*, 100 AD3d 1271, 1273 [2012]; *Zupa v Paradise Point Assn., Inc.*, 22 AD3d 843 [2005]; *Williams v Hertzwig*, 251 AD2d 655, 656 [1998]; *Futerfas v Shultis*, 209 AD2d 761, 762 [1994]; *see also Allen Avionics v Universal Broadcasting Corp.*, 118 AD2d 527, 528 [1986], *affd sub nom. Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406 [1987]). Here, Sand Land made no claim that the plaintiffs could not prove special damages, and Sand Land offered no other ground for dismissing the common-law claim in its entirety. Accordingly, we must reverse the order insofar as it dismissed, as academic, those portions of the first and second causes of action.

Sand Land's remaining contentions are without merit. Balkin, J.P., Chambers, Cohen and Maltese, JJ., concur.