■ In the Matter of SAND LAND CORPORATION et al., Respondents, v ZONING BOARD OF APPEALS OF TOWN OF SOUTHAMPTON et al., Appellants. [28 NYS3d 405]—

In a proceeding pursuant to CPLR article 78, inter alia, to review a determination of the Zoning Board of Appeals of the Town of Southampton dated June 21, 2012, which, after a hearing, vacated those portions of a determination and certificate of occupancy issued by the Chief Building Inspector of the Town of Southampton which found that the use of the subject property for the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil and mulch, and the storage, sale, and delivery of mulch, topsoil, and wood chips, constituted a preexisting nonconforming use, the Zoning Board of Appeals of the Town of Southampton appeals, and Joseph Phair, Margot Gilman, and Amelia Doggwiler separately appeal, from a judgment of the Supreme Court, Suffolk County (Asher, J.), dated June 10, 2014, which granted the petition and, among other things, reinstated the certificate of occupancy in its entirety.

Ordered that the judgment is reversed, on the law, with one bill of costs payable to the appellants appearing separately and filing separate briefs, the petition is denied, the determination dated June 21, 2012, is confirmed, and the proceeding is dismissed on the merits.

The issues in the parties' dispute are being litigated in his proceeding pursuant to CPLR article 78 and also in an action for, among other things, injunctive relief (*see Phair v Sand Land Corp.*, 137 AD3d 1237 [2016] [decided herewith]).

Sand Land Corporation (hereinafter Sand Land) owns an ap-

proximately 50-acre parcel of real property in a residential zoning district in the Town of Southampton. Wainscott Sand & Gravel Corporation (hereinafter WS&G) owns and operates certain mining and reclamation activities conducted on that property. In 2005, individual residents of the Town who owned homes nearby (hereinafter collectively the neighbors), commenced an action, inter alia, to enjoin Sand Land from using the property for certain uses which, they alleged, violated the Town's zoning code.

In May 2010, while the neighbors' action was pending, Sand Land filed an application with the Town's Chief Building Inspector requesting a "pre-existing certificate of occupancy" for the use of the property for (1) the operation of a sand mine, (2) the receipt and processing of trees, brush, leaves, and other clearing debris into topsoil or mulch, (3) the receipt and processing of concrete, asphalt pavement, brick, rock, and stone into a concrete blend, and (4) the storage, sale, and delivery from the property of sand, mulch, topsoil, wood chips, and concrete blend. In support of its application, Sand Land, which asserted that the property had been used continually for these operations since before the Town adopted its zoning code, submitted, inter alia, affidavits from eight individuals familiar with the site and its history. In opposition, the neighbors submitted various exhibits that, they insisted, conclusively refuted Sand Land's claim that the challenged uses predated the adoption of the zoning code.

In a determination dated July 18, 2011, the Town's Chief Building Inspector found that Sand Land was entitled to a preexisting certificate of occupancy for: "(i) the operation of a sand mine, (ii) the receipt and processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and (iii) the storage, sale, and delivery of sand, mulch, topsoil, and wood chips." At the same time, however, the Chief Building Inspector concluded that Sand Land was not entitled to a preexisting certificate of occupancy "[a]s it relates to the receipt and processing of concrete, asphalt pavement, brick, rock, and stone into concrete blend." The following day, the Chief Building Inspector issued a certificate of occupancy certifying the preexisting use of the property for "[t]he operation of a sand mine, the receipt and processing of trees, brush, stumps, leaves and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of sand, mulch, topsoil, and wood chips."

Sand Land did not appeal or cross-appeal from any portion of the Chief Building Inspector's determination or certificate of occupancy. The neighbors, however, appealed to the Town's

Zoning Board of Appeals (hereinafter the ZBA). In that appeal, the neighbors argued that the evidence Sand Land had submitted to the Chief Building Inspector did not support the Chief Building Inspector's finding of "pre-existing use status" with respect to receipt and processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of sand, mulch, topsoil, and wood chips.

Following a public hearing on the neighbors' appeal, the ZBA, in a determination dated June 21, 2012, concluded that the evidence presented supported the finding that the operation of a sand mine, including the storage, sale, and delivery of sand, constituted a legally established nonconforming use, and that it also supported the finding that the receipt of trees, brush, stumps, leaves, and other clearing debris was a preexisting accessory use to the mining operation on the site. At the same time, however, the ZBA found that the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of mulch, topsoil, and wood chips were "new uses" that were not preexisting and which were not a permitted expansion of any legally established nonconforming use. Accordingly, the ZBA annulled those portions of the Chief Building Inspector's determination and certificate of occupancy which approved such "new uses" as preexisting.

Thereafter, Sand Land and WS&G commenced this CPLR article 78 proceeding challenging the ZBA's June 21, 2012, determination. Among other things, Sand Land and WS&G argued that it was irrational, arbitrary, an abuse of discretion, and internally inconsistent for the ZBA to conclude that the evidence established that the property could "receive" brush, stumps, leaves, and other clearing debris, but that the same evidence did not establish that these materials, once on the property, could be "processed" or sold.

The Supreme Court agreed with Sand Land and WS&G, vacated those portions of the ZBA's June 21, 2012, determination which found that the processing of trees, brush, stumps, leaves, and other clearing debris, and the sale of mulch, topsoil, and wood chips were not protected as preexisting nonconforming uses, and, among other things, reinstated, in its entirety, the certificate of occupancy issued by the Chief Building Inspector. The ZBA and the neighbors appeal. We reverse the judgment, deny the petition, confirm the ZBA's determination, and dismiss the proceeding on the merits.

"A use of property that existed before the enactment of a

zoning restriction that prohibits the use is a legal nonconforming use, but the right to maintain a nonconforming use does not include the right to extend or enlarge that use" (*Matter of McDonald v Zoning Bd. of Appeals of Town of Islip*, 31 AD3d 642, 642-643 [2006]; *see Matter of P.M.S. Assets v Zoning Bd. of Appeals of Vil. of Pleasantville*, 98 NY2d 683, 684-685 [2002]; *Matter of Toys "R" Us v Silva*, 89 NY2d 411, 417 [1996]). Indeed, "[b]ecause nonconforming uses are viewed as detrimental to zoning schemes, public policy favors their reasonable restriction and eventual elimination" (*Matter of 550 Halstead Corp. v Zoning Bd. of Appeals of Town / Vil. of Harrison*, 1 NY3d 561, 562 [2003]; *see Matter of P.M.S. Assets v Zoning Bd. of Appeals of Vil. of Pleasantville*, 98 NY2d at 685; *Matter of Steiert Enters., Inc. v City of Glen Cove*, 90 AD3d 764, 767 [2011]). " 'Further, in keeping with the sound public policy of eventually extinguishing all nonconforming uses, the courts will enforce a municipality's reasonable circumscription of the right to expand the volume or intensity of a prior nonconforming use' " (*Matter of Steiert Enters., Inc. v City of Glen Cove*, 90 AD3d at 768, quoting *Matter of McDonald v Zoning Bd. of Appeals of Town of Islip*, 31 AD3d at 643).

In general, "the determination of a zoning board regarding the continuation of a preexisting nonconforming use must be sustained if it is rational and supported by substantial evidence, even if the reviewing court would have reached a different result" (*Matter of P.M.S. Assets v Zoning Bd. of Appeals of Vil. of Pleasantville*, 98 NY2d at 685; *see Matter of Jacobsen v Town of Bedford Zoning Bd. of Appeals*, 59 AD3d 622, 623 [2009]; *Matter of RJA Holding Inc. v Town of Wappingers Zoning Bd. of Appeals*, 37 AD3d 724, 724 [2007]). Here, contrary to the conclusion reached by the Supreme Court, the findings as to preexisting uses were not arbitrary and capricious, an abuse of discretion, or internally inconsistent on the evidence presented. The ZBA properly concluded that the evidence supported the Chief Building Inspector's findings that the operation of a sand mine, including the storage and delivery of sand, constituted a preexisting nonconforming use, and that the receipt of trees, brush, stumps, leaves, and other clearing debris was a preexisting accessory use to this mining operation. The evidence also supported the ZBA's finding, in effect, that Sand Land had not met its burden of proving that the processing of trees, brush, stumps, leaves, and other clearing debris into topsoil or mulch, and the storage, sale, and delivery of mulch, topsoil, and wood chips were not "new uses," or were a permitted expansion of any legally established nonconforming use (*see Matter of Steiert Enters., Inc. v City of Glen Cove*,

90 AD3d at 768; *Matter of McDonald v Zoning Bd. of Appeals of Town of Islip*, 31 AD3d at 643). Indeed, considering the record as a whole, it was reasonable for the ZBA to conclude, in effect, that these "new uses" constituted a "significant change" from the nonconforming sand mine operation and the accessory receipt of various yard debris. Accordingly, the Supreme Court erred in annulling the ZBA's determination.

Moreover, although the Supreme Court concluded that the ZBA "improperly placed the burden on Sand Land," we find no such error in the ZBA's analysis. As is undisputed, the owner of a property, generally speaking, "must establish that the allegedly pre-existing use was legal prior to the enactment of the prohibitive zoning ordinance which purportedly rendered it nonconforming" (*Matter of Keller v Haller*, 226 AD2d 639, 640 [1996]; *see Matter of Cinelli Family Ltd. Partnership v Scheyer*, 50 AD3d 1136, 1137 [2008]; *Incorporated Vil. of Old Westbury v Alljay Farms*, 100 AD2d 574 [1984], *mod* 64 NY2d 798 [1985]). Here, even though the Chief Building Inspector found that Sand Land met this burden, when the matter went for review before the ZBA, the ZBA was authorized to consider the Chief Building Inspector's determination de novo and make such a "determination as in its opinion ought to have been made in the matter" (Town Law § 267-b [1]; *see Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent*, 65 AD3d 154, 159 [2009]; *Matter of Board of Architectural Review & Historic Preserv. of Vil. of Southampton v Zoning Bd. of Appeals of Vil. of Southampton*, 279 AD2d 523, 524 [2001]). When presenting the matter to the ZBA, the neighbors only had to show that the evidence submitted by Sand Land in support of its application was insufficient to demonstrate that the challenged uses existed on the subject property prior to the adoption of the prohibitive zoning ordinance (*see Matter of Keller v Haller*, 226 AD2d at 640; *cf. Matter of Letourneau v Town of Berne*, 89 AD3d 1202 [2011]; *Matter of Haberman v Zoning Bd. of Appeals of Town of E. Hampton*, 85 AD3d 1170 [2011]).

The remaining contentions of Sand Land and WS&G are without merit. Balkin, J.P., Chambers, Cohen and Maltese, JJ., concur.