Matter of Keil v Greenway Heritage Conservancy for the Hudson Riv. Val., Inc. (2020 NY Slip Op 03580)





Matter of Keil v Greenway Heritage Conservancy for the Hudson Riv. Val., Inc.


2020 NY Slip Op 03580


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

529339

[*1]In the Matter of Edwin A. Keil et al., Appellants,
v
Greenway Heritage Conservancy for the Hudson River Valley, Inc., Also Known as Greenway Conservancy for the Hudson River Valley, Inc., Respondent.

Calendar Date: May 21, 2020

Before: Egan Jr., J.P., Mulvey, Aarons, Pritzker and Colangelo, JJ.


William J. Better, PC, Kinderhook (Joseph D. Clyne of counsel), for appellants.
Letitia James, Attorney General, Albany (Meredith G. Lee-Clark of counsel), for respondent.



Mulvey, J.
Appeal from a judgment of the Supreme Court (Mott, J.), entered May 22, 2019 in Columbia County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent approving a final environmental impact statement related to the development of a recreational trail.
Respondent, a public benefit corporation, was created "for the preservation and enhancement of the natural and historic resources of the Hudson [R]iver valley" (ECL 44-0111 [1]; see 44-0103 [3]), and, in furtherance of that purpose, is required to "designate and develop or cause to be developed" a trail system along the Hudson River (ECL 44-0121 [1]). Pursuant to statute, respondent's trail plans must include "segments that can be restricted to non-motorized use" (ECL 44-0121 [1] [c]). To that end, respondent set out to establish the Albany-Hudson Electric Trail (hereinafter Trail), a roughly 36-mile stretch of pedestrian and bicycle trail from the City of Rensselaer, Rensselaer County to just north of the City of Hudson, Columbia County, which is planned to primarily follow a defunct electric trolley bed now used and maintained as a utility corridor by National Grid.[FN1] Respondent entered into a license agreement with National Grid for use of the utility corridor as part of the Trail for the public's recreational use.
The proposed Trail includes a section of the utility corridor located in the Town of Stockport, Columbia County that abuts properties owned by the individual petitioners, and where petitioner Glencadia Farm, Ltd. has an express easement across the corridor. Respondent released a draft concept plan for the Trail in August 2017 and, thereafter, began conducting various outreach initiatives to engage with and inform the public about the Trail, including a website, public meetings, mailings to roughly 1,300 affected property owners and in-person meetings with more than 75 property owners. In January 2018, respondent released a final concept plan. That same month, pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]; see also 6 NYCRR part 617), respondent released a draft environmental impact statement (hereinafter DEIS) for a 60-day public comment period. In September 2018, respondent issued its final environmental impact statement (hereinafter FEIS) for the Trail project after a 30-day public comment period, finding that any adverse environmental impacts by the project would be adequately avoided or minimized by the mitigation measures proposed. Respondent applied to the US Army Corps of Engineers (hereinafter the Corps) and the Department of Environmental Conservation (hereinafter DEC) for permits related to the adverse impacts and mitigation to wetlands associated with the development of the Trail, and the FEIS states that it is subject to these permit approvals.[FN2]
Petitioners commenced this CPLR article 78 proceeding, alleging that respondent failed to comply with SEQRA and, thus, that respondent's determination approving the FEIS should be annulled. Supreme Court dismissed the petition, finding that respondent complied with SEQRA. Petitioners appeal.
We conclude that petitioners did not preserve for our review their argument concerning the Code of the Town of Stockport (hereinafter the zoning code), as they failed to include their present argument in the petition and it was thus never presented to Supreme Court (see Matter of Rovinsky v Zucker, 167 AD3d 122, 125 n 2 [2018]). As limited by the petition, Supreme Court addressed only whether respondent was bound by the zoning code, yet petitioners explicitly state in their appellate brief that the issue of whether respondent was bound by the zoning code is not argued on this appeal and will instead be addressed in a "separate action." Rather, petitioners now argue that respondent committed an error of law by failing to consider the environmental implications of the zoning code, regardless of whether respondent was subject to it. We will not address this unpreserved issue.
Pursuant to SEQRA, any development project "that requires state agency approval, . . . [and] 'which may have a significant effect on the environment,' must go through a full SEQRA assessment to make sure that it is undertaken in a way that minimizes damage to the environment and public health" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 424-425 [2017], quoting ECL 8-0109 [1], [2]). In compliance with the substantive and procedural requirements of SEQRA and all applicable regulations (see ECL 8-0109 [2]; 6 NYCRR parts 617-618), a lead agency must prepare a DEIS and FEIS to "analyze the environmental impact and any unavoidable adverse environmental effects of the project under review, as well as alternatives to the proposed action, including a no-action alternative, and mitigation measures" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 425 [internal quotation marks, ellipses and citation omitted]; see ECL 8-0109 [2] [a]-[d], [f]). Prior to approving the project, the agency must draft a Findings Statement that verifies that the agency complied with SEQRA and "provide[s] a rationale for the agency's decision" (6 NYCRR 617.11 [c], [d]; see ECL 8-0109 [8]). This process is meant to "'insure[] that agency decision-makers — enlightened by public comment where appropriate — will identify and focus attention on any environmental impact of proposed action, that they will balance those consequences against other relevant social and economic considerations, minimize adverse environmental effects to the maximum extent practicable, and then articulate the bases for their choices'" (Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 425, quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 414-415 [1986]).
In reviewing an agency's SEQRA findings, courts accord a lead agency considerable deference, as "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 416). Although "[l]iteral compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice" (Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d 1256, 1258-1259 [2018] [internal quotation marks and citations omitted]), "[t]he court's role is not to second-guess the agency's determination" (Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d 1181, 1183 [2019]). Importantly, a reviewing court must not substitute its judgment of the facts and alternatives for that of the agency, and "an agency's obligation under SEQRA must be viewed in light of a rule of reason, realizing that not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before the substantive dictates of SEQRA are satisfied" (Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1223 [2018] [internal quotation marks and citations omitted]; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 430; Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs, 46 AD3d 979, 985 [2007], lv denied 10 NY3d 706 [2008]). This Court is thus "tasked with reviewing the record to determine whether the . . . lead agency[] identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d at 1258 [internal quotation marks and citations omitted]; see Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d at 1183). "A determination 'should be annulled only if it is arbitrary, capricious or unsupported by the evidence'" (Matter of Heights of Lansing, LLC v Village of Lansing, 160 AD3d 1165, 1166 [2018], quoting Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 232 [2007]; see Akpan v Koch, 75 NY2d 561, 570 [1990]).
Respondent identified 63 discrete wetlands located along the proposed Trail, most of which were relatively small, lacked direct surface connections to larger bodies of water, had been human-altered and were devoid of standing water. Although respondent's study of the affected wetlands demonstrated that "[nine] of the 63 wetlands provide wildlife habitat, with the majority of the wetlands providing groundwater recharge as their primary function[,]" "[m]any of the wetlands showed strong evidence of historically disturbed soils, due to the [s]tudy [a]rea location on an abandoned trolley bed," and these "past disturbances have resulted in low biodiversity and high prevalence of invasive species within wetlands." Ultimately, respondent determined that, "[f]or these reasons, wetlands with functions such as aquatic habitat, wildlife habitat, nutrient transformation, and erosion control are almost entirely absent from the [s]tudy [a]rea." To minimize impacts, respondent altered the Trail design to avoid intersecting with wetlands as much as possible, including generally locating crossings in previously disturbed areas, at the narrowest sections of wetlands or along the edges of wetlands where possible.
Where wetlands would be impacted, respondent determined that it could not pursue mitigation measures on site, as the corridor is narrow and contains the Trail as well as National Grid's utility infrastructure. To remedy the effects on approximately two aggregate acres of wetlands that would be impacted along the 36-mile Trail, respondent proposed a wetland mitigation project at Schodack Island State Park, which is within the same watershed as the Trail and equidistant from most points on the Trail. Respondent determined that the mitigation project would "create freshwater tidal wetlands, an ecologically rare wetland type that is a conservation priority for New York State" and that, "[b]ecause the [mitigation] project involves restoring an area that was once wetland (rather than creating an artificial wetland in an upland area), [it] will create high-value wetlands providing significant ecological, habitat, and flood mitigation services." Respondent then began the wetlands permitting process with DEC and the Corps, which included extensive studies on the mitigation project and precise location of the wetlands to be created. According to the FEIS, respondent planned for "[t]he exact acreage and design of the wetland mitigation project [within the State Park to] be finalized through a permit issued by the [Corps]," which has wetland permitting authority.
The record reflects that respondent identified wetlands to be affected by the Trail project, conducted an extensive study of the wetlands and their respective environmental values, formulated a mitigation plan and explained the benefits of that plan. Thus, respondent took a hard look at the environmental impact of the Trail upon affected wetlands and devised a mitigation plan in accordance with SEQRA requirements (see ECL 8-0109; Matter of Brunner v Town of Schodack Planning Bd., 178 AD3d at 1183-1184). Furthermore, respondent did not improperly delegate its SEQRA responsibilities regarding wetlands to DEC or the Corps, as respondent provided a mitigation plan but reasonably recognized that it could not be finalized until DEC and the Corps issued their approvals, which would necessarily come after the SEQRA process was completed (see Matter of Mombaccus Excavating, Inc. v Town of Rochester, N.Y., 89 AD3d 1209, 1212 [2011], lv denied 18 NY3d 808 [2012]; compare Matter of Penfield Panorama Area Community v Town of Penfield Planning Bd., 253 AD2d 342, 349-350 [1999]).
In compliance with SEQRA, respondent rationally selected its chosen route for the Trail after considering and evaluating alternatives. SEQRA requires lead agencies to "act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects, including effects revealed in the environmental impact statement process" (ECL 8-0109 [1]; see Akpan v Koch, 75 NY2d at 570; Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539, 1542-1543 [2012]). To that end, an agency's FEIS must provide "[t]he description and evaluation of each alternative . . . at a level of detail sufficient to permit a comparative assessment of the alternatives discussed," including a no-action alternative (6 NYCRR 617.9 [b] [5] [v]). "To be meaningful, any choice among alternatives must be based on an awareness of all reasonable options, but the degree of detail required in assessing those alternatives will vary with the circumstances and nature of each proposal. A rule of reason applies; the agency must consider a reasonable range of alternatives to the specific project" (Matter of Town of Dryden v Tompkins County Bd. of Representatives, 78 NY2d 331, 333-334 [1991] [citations omitted]). "[A]gencies have considerable latitude evaluating environmental effects and choosing between alternative measures" (Akpan v Koch, 75 NY2d at 570; see ECL 8-0109 [8]; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 417), and "disagree[ment] with the alternative chosen by the [agency] does not prove that the [agency] did not take the requisite 'hard look'" (Matter of Morse v Town of Gardiner Planning Bd., 164 AD2d 336, 340 [1990]). "Where it appears . . . that there has been such a reasonable consideration of alternatives, the judicial inquiry is at an end" (Matter of Town of Dryden v Tompkins County Bd. of Representatives, 78 NY2d at 334 [citation omitted]).
Petitioners contend that respondent failed to adequately consider an alternative path that would have diverted the Trail to County Route 25/25A for a few miles instead of following the portion of the utility corridor that abuts their properties. As part of its selection process, respondent engaged extensively with the public regarding the Trail, including its implications and alternatives, by offering several public comment periods, holding several public information and comment sessions, and receiving and addressing hundreds of written comments on the matter. In response to comments, including some from petitioners, respondent evaluated several alternative routes for the Trail in the area of petitioners' properties. Respondent's analysis reflects that the segment of County Route 25 that could potentially replace the use of the utility corridor adjacent to petitioners' properties is not conducive to pedestrian and bicycle traffic, as it consists of narrow lanes with minimal or no shoulders and no sidewalks or other pedestrian accommodations, including a single-lane bridge with elements noncompliant with the Americans with Disabilities Act. Photographs included in the FEIS show that the space adjacent to the relevant section of roadway is encumbered with structures and signage and utility poles, among other things, rendering the creation of safe travel space for pedestrians and bicyclists very difficult. Moreover, most of the relevant segment has a 55-mile-per-hour speed limit, which respondent found would be complex to change. In contrast, respondent concluded that use of the utility corridor adjacent to petitioners' respective properties, as proposed, "pose[d no] special engineering challenges" and would better serve the projects' safety and recreational goals. Respondent also relied upon the report of a consulting firm that evaluated various roadways for use as the Trail and recommended the use of the utility corridor adjacent to petitioners' properties for that segment of the Trail, after examining four alternatives.
Petitioners argue that their proposed alternative was preferable and that respondent acted irrationally by rejecting it, considering that the proposed Trail does include a short on-road segment on County Route 25 located south of petitioners' properties. However, that segment was located on-road due to engineering and other complications associated with the utility corridor parallel to that segment, including that three railroad bridges had been removed from the corridor and costs to rebuild them would be prohibitive, as well as title issues in the avoided portion of the corridor and the construction of a residence therein. In contrast, these concerns were not present along the utility corridor adjacent to petitioners' properties, and respondent demonstrated that the use of the nearby segment of County Route 25 would present safety concerns for pedestrians and bicyclists. Additionally, the on-road portion was added in a location where the speed limit is 30 miles per hour, as opposed to petitioners' proposal in a 55-mile-per-hour segment. As petitioners note, their proposed alternative would result in the disruption of fewer wetland areas, among other benefits. However, as the record demonstrates that respondent considered that alternative and rationally determined that the use of the utility corridor adjacent to petitioners' properties provided the best option for the Trail in consideration of the above-described safety, cost and environmental factors and the Trail's purpose to provide segments of non-motorized use by the public, we will not disturb that determination (see Matter of Town of Dryden v Tompkins County Bd. of Representatives, 78 NY2d at 333-334; Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs, 46 AD3d at 987-988).
Egan Jr., J.P., Aarons, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: The Trail will connect with other trails at both ends, to become part of the 750-mile-long Empire State Trail.

Footnote 2: According to respondent, the permits have been granted.