Matter of Town of Waterford v New York State Dept. of Envtl. Conservation (2020 NY Slip Op 06180)





Matter of Town of Waterford v New York State Dept. of Envtl. Conservation


2020 NY Slip Op 06180


Decided on October 29, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 29, 2020

528560 528595

[*1]In the Matter of Town of Waterford et al., Appellants,
v
New York State Department of Environmental Conservation et al., Respondents. (Proceeding No. 1.)
In the Matter of Town of Halfmoon et al., Appellants,
v
New York State Department of Environmental Conservation et al., Respondents. (Proceeding No. 2.)

Calendar Date: September 14, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Mark Schachner of counsel), for Town of Waterford and others, appellants.
Nolan Heller Kauffman LLP, Albany (David A. Engel of counsel), for Town of Halfmoon and others, appellants.
Letitia James, Attorney General, Albany (Meredith G. Lee-Clark of counsel), for New York State Department of Environmental Conservation, respondent.
Bond, Schoeneck & King PLLC, Syracuse (Kevin M. Bernstein of counsel), for Town of Colonie and others, respondents.
Todd D. Ommen, Pace Environmental Litigation Clinic, White Plains, for Riverkeeper, Inc., amicus curiae.



Devine, J.
Appeals (1) from an order of the Supreme Court (Crowell, J.), entered July 16, 2018 in Saratoga County, which, in two proceedings pursuant to CPLR article 78, granted a motion by respondent Department of Environmental Conservation to change venue, and (2) from a judgment of said court (Young, J.), entered January 25, 2019 in Albany County, which, in two proceedings pursuant to CPLR article 78, dismissed the amended petitions.
Respondent Town of Colonie (hereinafter Colonie) owns a landfill, located near the banks of the Mohawk River in Albany County, that is currently operated by respondent Capital Region Landfills, Inc. (hereinafter CRL) under the authority of a solid waste management facility permit issued by respondent Department of Environmental Conservation (hereinafter DEC) (see ECL 27-0703; 6 NYCRR former part 360). As the landfill was running out of space, Colonie applied for modification of the DEC permit and other permits needed for the landfill to expand above and next to the existing site. DEC assumed lead agency status and issued a positive declaration pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), after which it embarked upon a years-long review of the environmental impacts of the landfill expansion. At the conclusion of that process, DEC determined that the landfill expansion would not have a significant negative environmental impact and granted the necessary approvals with conditions intended to head off such impacts, including barring operations within 500 feet of the river and capping the maximum height of the landfill.
Two Saratoga County municipalities on the far bank of the river and several of their residents — namely, petitioner Town of Waterford and 11 of its residents (hereinafter collectively referred to as the Waterford petitioners) in proceeding No. 1 and petitioner Town of Halfmoon and five of its residents (hereinafter collectively referred to as the Halfmoon petitioners) in proceeding No. 2 — commenced these CPLR article 78 proceedings against various entities to, among other things, challenge DEC's SEQRA findings and the ensuing permits. As is relevant here, Colonie and CRL answered the petitions and amended petitions and raised the objection that petitioners lacked standing to sue. DEC also joined issue but, before doing so, served demands to change the venue of both proceedings from Saratoga County to Albany County. The rejection of those demands led to a motion by DEC to change venue that was granted by Supreme Court (Crowell, J.) in July 2018. Thereafter, Supreme Court (Young, J.) issued a January 2019 judgment in which it determined that petitioners lacked standing and dismissed the amended petitions. Petitioners appeal from the July 2018 order and the January 2019 judgment.[FN1]
To begin, inasmuch as the issue of petitioners' standing to challenge DEC's actions was raised, they were obliged to show an actual stake in the controversy by "establishing both an injury-in-fact and that the asserted injury is within the zone of interests sought to be protected by the statute alleged to have been violated" (Matter of Association for a Better Long Is., Inc. v. New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]; see Matter of New York State Bd. of Regents v State Univ. of N.Y., 178 AD3d 11, 17 [2019], lvs denied 35 NY3d 912 [2020]; Matter of Village of Woodbury v Seggos, 154 AD3d 1256, 1258 [2017]). As petitioners correctly note, the fact that the individual petitioners reside some distance away from the landfill did not preclude them from having standing to challenge the determinations permitting its expansion (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 304-305 [2009]; Matter of Hohman v Town of Poestenkill, 179 AD3d 1172, 1173-1174 [2020]). That said, many of the impacts alleged were either economic impacts that do not afford standing to challenge a SEQRA determination (see Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d at 8-9; Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 777 [1991]; Matter of Village of Canajoharie v Planning Bd. of Town of Florida, 63 AD3d 1498, 1501-1502 [2009]) or amounted to displeasure with the sights and smells of the landfill that would not ordinarily be "specific to the individuals who allege it, and . . . 'different in kind or degree from the public at large'" so as to afford standing (Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 311 [2015], quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d at 778; see Matter of Save the Pine Bush, Inc. v Common Council of the City of Albany, 13 NY3d at 306; Matter of Finger Lakes Zero Waste Coalition, Inc. v Martens, 95 AD3d 1420, 1422 [2012], lv denied 19 NY3d 811 [2012]; Matter of Save Our Main St. Bldgs. v Greene County Legislature, 293 AD2d 907, 908 [2002], lv denied 98 NY2d 609 [2002]).
It nevertheless appears that at least some of the petitioners will suffer distinct environmental harm under the circumstances presented in these proceedings. For instance, although one might expect the visual impact of the landfill expansion to be widespread, DEC specifically found that the impact would be limited and that the areas where the individual petitioners live and/or maintain recreation facilities would be among the few having a "generally unobstructed" view of the landfill. Many of the individual petitioners confirmed that they can see the landfill from their residences, explained how they are personally impacted by the sights, sounds, smells and dust generated by operations there, and further articulated how those impacts will worsen if the landfill expansion goes forward (see Matter of Sierra Club v Village of Painted Post, 26 NY3d at 311; Matter of Cady v Town of Germantown Planning Bd., 184 AD3d 983, 985-986 [2020]; Matter of Humane Socy. of U.S. v Empire State Dev. Corp., 53 AD3d 1013, 1017 [2008], lv denied 12 NY3d 701 [2009]; compare Matter of Finger Lakes Zero Waste Coalition, Inc. v Martens, 95 AD3d at 1422-1423). Moreover, the Halfmoon petitioners alleged that those impacts will impair the use and enjoyment of Halfmoon's public park, trails and boat launches across the river, while one of the individual Halfmoon petitioners described how she was intimately involved in the development of a trail system and boat launch along the river and was similarly concerned by those impacts (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 306). Standing rules are not to be applied in a manner so restrictive that agency actions are insulated from judicial review and, in our view, the foregoing was sufficient to establish that at least some of the petitioners in each proceeding will suffer environmental impacts different from those experienced by the general public so as to afford standing to sue (see Matter of Sierra Club v Village of Painted Post, 26 NY3d at 311; Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 306; Matter of Village of Woodbury v Seggos, 154 AD3d at 1259-1260; Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539, 1541-1542 [2012]). Accordingly, although not every petitioner may have established standing (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 813 [2003], cert denied 540 US 1017 [2003]), Supreme Court (Young, J.) erred in dismissing either proceeding on standing grounds.
Inasmuch as the record before us permits an assessment of the merits of petitioners' arguments, we choose to address them in the interest of judicial economy rather than remit for Supreme Court to do so (see Matter of Torres v Stanford, 173 AD3d 1537, 1538 [2019]). In the absence of a need for remittal, petitioners' arguments regarding the appropriate venue of these proceedings are academic. Petitioners' challenges to DEC's determinations are, more importantly, unpersuasive.
Pursuant to the regulations then in effect, the application by Colonie to modify its solid waste management facility permit was to be treated as a "new" application "[f]or the purposes of" the uniform procedures set forth in 6 NYCRR part 621 (6 NYCRR former 360-1.8 [e] [1]; see ECL 70-0115 [2] [d]; 6 NYCRR 621.11 [h]). DEC did so, but the Waterford petitioners argue that such a "new" application should have also been treated as one for an "initial permit to construct and operate a landfill" subject to the requirements of 6 NYCRR former 360-2.3.[FN2] DEC declined to do so upon the grounds that the application related to the expansion of an already permitted landfill rather than the initial construction of one — thereby removing it from the ambit of 6 NYCRR former 360-2.3 — and that 6 NYCRR former 360-1.8 only required the application to be treated as "new" for purposes of the review procedures set forth in 6 NYCRR part 621. This interpretation finds support in the regulatory language and, according deference to DEC's reading of its own regulations, we perceive no reason to disturb it (see e.g. Matter of Gracie Point Community Council v New York State Dept. of Envtl. Conservation, 92 AD3d 123, 1289 [2011], lv denied 19 NY3d 807 [2012]). It is accordingly irrelevant whether the application was complete within the meaning of 6 NYCRR former 360-2.3.
Petitioners further argue, with the support of amicus curiae, that DEC should have conducted an adjudicatory hearing on issues raised during the SEQRA review. An adjudicatory hearing is required in the absence of disagreement between DEC and the project applicant where, as is relevant here, comments submitted during the review process disclose "substantive and significant issues relating to any [necessary] findings or determinations . . ., including the reasonable likelihood that a permit . . . will be denied or can be granted only with major modifications to the project" (6 NYCRR 621.8 [b]; see Matter of Catskill Heritage Alliance, Inc. v New York State Dept. of Envtl. Conservation, 161 AD3d 11, 18-19 [2018], lv denied 32 NY3d 904 [2018]; Matter of Riverkeeper, Inc. v New York State Dept. of Envtl. Conservation, 152 AD3d 1016, 1018 [2017]). During its review, DEC examined its potential environmental impacts and received a multitude of comments from petitioners and others on issues that included the offensive sights, smells and sounds of the landfill as well as the possibility that its expansion would disturb a nearby hazardous waste site.[FN3] DEC responded to those concerns by citing a report finding that the landfill expansion would not impair the monitorability of the hazardous waste site or any future remediation efforts and determining that whatever new aesthetic impacts would arise from the landfill expansion had already been studied and addressed through modifications, such as increasing the landfill expansion's setback from the Mohawk River and limiting its eventual height. DEC is entitled to deference on those technical assessments (see Matter of Catskill Heritage Alliance, Inc. v New York State Dept. of Envtl. Conservation, 161 AD3d at 19) and, in our view, rationally determined that petitioners had not shown the existence of ongoing "substantive and significant issues" regarding the landfill expansion that would require an adjudicatory hearing to address (6 NYCRR 621.8 [d]; see Matter of Village of Woodbury v Seggos, 154 AD3d at 1261; Matter of Eastern Niagara Project Power Alliance v New York State Dept. of Envtl. Conservation, 42 AD3d 857, 861 [2007]).
The Waterford petitioners finally challenge the SEQRA determination itself, which we will not disturb so long as DEC identified the pertinent areas of environmental concern, took a hard look at them and advanced a reasoned elaboration of the grounds for its determination (see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017]; Matter of Chinese Staff & Workers' Assn. v. Burden, 19 NY3d 922, 924 [2012]; Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d 1306, 1310 [2020]). Under this deferential standard of review, "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416 [1986]; accord Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 430).
The primary complaint in this regard is that DEC failed in its obligation to adequately explore alternatives to the landfill expansion and the impact if no action at all were taken (see ECL 8-0109 [2]; Matter of Keil v Greenway Heritage Conservancy for the Hudson Riv. Val., Inc., 184 AD3d 1048, 1051-1052 [2020]). DEC discussed the available alternatives at length in the SEQRA findings statement, however, noting that a landfill would be needed regardless of the waste disposal technologies deployed and that alternative sites and development scenarios for the Colonie landfill were impossible or impractical for various economic and environmental reasons. DEC also explicitly explored what would occur if no action were taken and the landfill allowed to close when it ran out of space, which DEC determined would have negative environmental impacts for the simple reason that waste would continue to be generated and need to be placed somewhere. The record provides support for DEC's findings that, in the event of the Colonie landfill's closure, local landfill options would be unable to handle the volume of waste generated and that there would be both increased waste hauling costs borne by localities and environmental impacts to all in the form of increased greenhouse gas emissions generated by the vehicles needed to haul the waste to other landfills hundreds of miles away. Petitioners find these explanations to be unpersuasive and suggest that DEC overlooked other alternatives, but we cannot substitute our "judgment of the facts and alternatives for that of [DEC]," nor can we require that DEC go beyond the dictates of SEQRA to explore "every conceivable environmental impact, mitigating measure or alternative" (Matter of Keil v Greenway Heritage Conservancy for Hudson Riv. Val., Inc., 184 AD3d at 1051 [internal quotation marks and citations omitted]; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d at 430). Suffice it to say, the foregoing reflects that DEC adequately considered alternatives to the proposed landfill expansion and, overall, we are satisfied that DEC took a hard look at the proposed landfill expansion. Thus, DEC's determination to approve it with mitigating conditions was rational.
Garry, P.J., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the appeals from the order are dismissed, without costs.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: No appeal as of right lies from a nonfinal order in a CPLR article 78 proceeding and we therefore dismiss petitioners' appeals from the July 2018 order (see CPLR 5701 [b] [1]; Matter of Robinson v DiNapoli, 172 AD3d 1513, 1515 n [2019], lv dismissed and denied 34 NY3d 1144 [2020]; Matter of Micklas v Town of Halfmoon Planning Bd., 170 AD3d 1483, 1484-1485 [2019]). Arguments relating to such an order may be raised on the appeals from the final judgment (see Matter of Robinson v DiNapoli, 172 AD3d at 1515 n).

Footnote 2: The environmental analyst who reviewed Colonie's permit applications averred that the requirements for an "initial permit" set forth by 6 NYCRR former 360-2.3 were satisfied, implying that they needed to be. DEC made clear in its responses to comments during the SEQRA review, however, that it was "not required to consider [Colonie's] expansion application as an initial application for a new solid waste management facility and has not done so."

Footnote 3: Notwithstanding the complaints of the Waterford petitioners, the alleged impacts of the landfill expansion upon the hazardous waste site were properly investigated and addressed as required by 6 NYCRR former 360-1.9 (g).