Matter of Save the Pine Bush, Inc. v Town of Guilderland (2022 NY Slip Op 03043)





Matter of Save the Pine Bush, Inc. v Town of Guilderland


2022 NY Slip Op 03043


Decided on May 5, 2022


Appellate Division, Third Department




Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 5, 2022

534176
[*1]In the Matter of Save the Pine Bush, Inc., Appellant,
v
Town of Guilderland et al., Respondents.

Calendar Date:March 23, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Pace Environmental Litigation Clinic, Inc., White Plains (Todd D. Ommen of counsel), for appellant.
James Melita, Town Attorney, Guilderland (Peter G. Barber of counsel), for Town of Guilderland and another, respondents.
Whiteman Osterman & Hanna LLP, Albany (Robert S. Rosborough IV of counsel), for Pyramid Management Group, LLC and others, respondents.



Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (McDonough, J.), entered October 8, 2021 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, among other things, review a determination of respondent Planning Board of the Town of Guilderland granting the requests of respondent Rapp Road Development, LLC for subdivision and site plan approval.
The underlying facts are detailed in this Court's decision in a related matter (Matter of Hart v Town of Guilderland, 196 AD3d 900 [2021]). To recap, in 2018, respondent Town of Guilderland rezoned Crossgates Mall and other lands in proximity to the Albany Pine Bush preserve (hereinafter the preserve) to allow for denser residential and commercial development. Later that year, respondent Rapp Road Development, LLC (hereinafter RRD) applied to respondent Planning Board of the Town of Guilderland (hereinafter the Planning Board) for subdivision and site plan approval to construct several buildings containing commercial space and apartment units (hereinafter the project) on vacant land in the area that was owned by a related entity, respondent Crossgates Releaseco, LLC, and that had previously been used for decades as a pig farm.
In July 2019, the Planning Board declared itself the lead agency for the review of the project required by the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]). It then determined that a significant cumulative adverse effect on the environment was possible if the project was viewed in conjunction with other potential development in the area, including proposed construction of what was revealed to be a Costco Wholesale retail store on a second site and the possibility of development on a third site — the second site then containing, among other things, a largely vacant residential development and the remnants of a road, and the third site covered in large part by more empty residences and a parking lot — owned by RRD, Crossgates Releaseco, respondent Pyramid Management Group, LLC (hereinafter collectively referred to as the Pyramid respondents) or related entities. The Planning Board accordingly issued a positive declaration and directed that an environmental impact statement (hereinafter EIS) be prepared to assess the potential environmental impacts of development on the three sites. The Pyramid respondents submitted a draft EIS that assessed those impacts and was, in February 2020, accepted by the Planning Board. The Pyramid respondents then submitted the final EIS (hereinafter FEIS) in July 2020, and it was accepted by the Planning Board. The Planning Board issued a SEQRA findings statement in August 2020, determining that the project was approvable, minimized any adverse environmental impacts to the maximum extent practicable and appropriately balanced environmental protection against social and economic considerations. The matter proceeded to a public hearing on the application for site plan approval [*2]in October 2020, after which the Planning Board issued a findings statement and granted site plan approval for the project with conditions later that month.
In September 2020, prior to the Planning Board granting site plan approval, the petitioners in Matter of Hart v Town of Guilderland (supra) commenced a combined declaratory judgment action and proceeding pursuant to CPLR article 78 seeking to, among other things, annul the Planning Board's SEQRA findings statement. In November 2020, Supreme Court (Lynch, J.) issued a judgment granting the petition in that matter. Several days later, citing a desire to preserve its rights if the judgment in Matter in Hart were reversed upon appeal, petitioner commenced this CPLR article 78 proceeding seeking to, among other things, annul the Planning Board's SEQRA findings statement and site plan approval. Following joinder of issue, Supreme Court (McDonough, J.) granted petitioner's motion for a stay pending the outcome of the appeal in Matter of Hart. After this Court issued its decision in July 2021 reversing the judgment in Matter of Hart — determining, in the process, "that the Planning Board took the requisite hard look at the project's anticipated adverse environmental impacts and provided a reasoned elaboration of its basis for approving the project" as required by SEQRA (Matter of Hart v Town of Guilderland, 196 AD3d at 913-914 [internal quotation marks, ellipsis and citations omitted]) — the parties agreed that the stay should be lifted and a judgment rendered on the merits. Supreme Court thereafter issued a judgment in which it determined that this Court's decision was "wholly dispositive of all SEQRA issues raised by petitioner." Supreme Court further rejected petitioner's procedural challenges to the Planning Board's October 2020 site plan approval and, as such, dismissed the petition in its entirety. Petitioner appeals, and we affirm.
To begin, we do not agree with Supreme Court that petitioner was foreclosed from challenging the propriety of the Planning Board's SEQRA determination given our decision in Matter of Hart. Petitioner was not precluded from raising those challenges, as it was not a party to the prior proceeding and there is no indication that it was in privity with one (see Whitney Lane Holdings, LLC v Don Realty, LLC, 130 AD3d 1218, 1220 [2015]). Our holding "that a sufficient environmental review was conducted" is nevertheless "binding on this appeal under established principles of stare decisis" (Matter of Plotnick v City of New York, 148 AD2d 721, 725 [1989], lv denied 74 NY2d 601 [1989]), and it is incumbent upon petitioner to articulate "compelling reasons" to depart from it (Matter of Schulz v State of New York, 241 AD2d 806, 808 [1997], appeal dismissed 90 NY2d 1007 [1997]; see Matter of Best Payphones, Inc. v Public Serv. Commn. of State of N.Y., 192 AD3d 1416, 1421 [2021], lvs denied 37 NY3d 914 [2021]). Petitioner largely attempts to do so by attacking aspects [*3]of the SEQRA determination that were not at issue in our prior decision, and we will accordingly address the merits of those challenges in the interest of judicial economy rather than remitting for Supreme Court to do so (see Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1440 [2020]). After considering those arguments and finding that petitioner has organizational standing to advance them (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 304-306 [2009]; see also Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d at 1440), we perceive no compelling reason to depart from our prior holding.
"This Court will not disturb a SEQRA determination 'so long as the lead agency identified the pertinent areas of environmental concern, took a hard look at them and advanced a reasoned elaboration of the grounds for its determination'" (Matter of Evans v City of Saratoga Springs, 202 AD3d 1318, 1320 [2022] [brackets and citation omitted], quoting Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d at 1442; see Matter of Friends of P.S. 163, Inc. v Jewish Home Lifecare, Manhattan, 30 NY3d 416, 430 [2017]). Our sole function, in short, "is to assure that the agency has satisfied SEQRA, procedurally and substantively," and we neither can nor will "evaluate data de novo, weigh the desirability of any particular action, choose among alternatives or otherwise substitute [our] judgment for that of the agency" (Matter of Town of Amsterdam v Amsterdam Indus. Dev. Agency, 95 AD3d 1539, 1543 [2012]; see Akpan v Koch, 75 NY2d 561, 573 [1990]; Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1223 [2018]). With that standard in mind, we turn to petitioner's arguments that the Planning Board failed to take a hard look at the cumulative environmental impact of the project and related development by failing to assess several aspects of that impact, including on species that are endangered, threatened or otherwise of concern, the potential for pesticide use in the construction and operation of the project, and the effect of the development on wetlands, climate change and air quality.[FN1]
Addressing those potential impacts, the Planning Board found that there would be no adverse environmental impacts upon threatened, endangered or otherwise significant flora and fauna. The Planning Board supported that finding by citing environmental studies prepared after site assessments that found no species of interest — including the Karner blue butterfly, the frosted elfin butterfly, the northern long-eared bat and various plant species, or any significant habitats, including those found in the preserve — on the three sites at issue. In response to comments submitted by individuals critiquing those studies, the FEIS reiterated that all three sites had been disturbed by prior human development and did not contain habitats [*4]that could support species of concern. The FEIS added that, even assuming that such a habitat could be restored, at great expense, on any of the sites, restoration would be pointless given that the contemplated development on the sites would be surrounded by developed parcels or otherwise separated from the preserve by a buffer of undeveloped land. The Planning Board relied upon the FEIS in preparing its SEQRA findings statement, in which it observed that none of the sites was suitable for inclusion in the preserve and that their development would be offset by RRD's planned conveyance of more suitable lands to the Albany Pine Bush Preserve Commission for inclusion in the preserve.[FN2]
As for pesticides, RRD represented that no pesticides would be used in either the project's construction or its operation, and the FEIS noted that any invasive plants would be physically removed during construction and operation rather than by the use of chemicals. Accordingly, the fact that the Planning Board did not address that "matter[] of doubtful relevance" further by assessing the effect of nonexistent pesticides on animals and plants is not fatal to its SEQRA determination (Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 308). Further, another study identified only one wetland on any of the sites, a .093-acre one running along a drainage ditch that could and would be filled in accordance with a nationwide permit issued by the United States Army Corps of Engineers. The Planning Board noted that study and found that filling the wetland would have no impact upon the preserve or any species of concern. The Planning Board determined that, despite efforts to call the contents of those studies into question, they were compelling and reflected that there would be no significant impact upon relevant flora or fauna from the project or development on nearby sites.
To the extent that petitioner's other challenges to the Planning Board's SEQRA determination are properly before us, a report prepared during the SEQRA review process thoroughly assessed the potential air quality impacts of the project and development on the other two sites and anticipated that "[n]o significant air quality impacts" would result. The Planning Board embraced those findings, also pointing out that any air quality impacts would be mitigated via the construction of a roundabout that would slow traffic and reduce vehicle emissions. The Planning Board further found that any potential development was too limited in scope to have a significant impact on global climate change and that, because all three sites were accessible by public transit and existing roadways, it was consistent with land use planning aimed at reducing greenhouse gas emissions. Indeed, in response to concerns about those emissions, it was observed that a net reduction in emissions was possible in view of the fact that apartment dwellers at the project could walk or rely more upon public transit [*5]given the project's location, and that Costco patrons, who presently travel 87 miles to the nearest Costco, would drive less if a local Costco were built.
It is, in sum, apparent that the Planning Board took the requisite hard look at the potential environmental impacts of concern to petitioner and offered thorough explanations for its determination. Although petitioner continues to argue that the studies upon which the Planning Board based its findings were incomplete and inaccurate, we cannot conclude that its decision to rely upon them "was irrational, nor may we substitute our judgment as to the accuracy of the data presented" (Akpan v Koch, 75 NY2d at 573). Thus, we perceive no reason to depart from our prior decision upholding the Planning Board's SEQRA determination (Matter of Hart v Town of Guilderland, 196 AD3d at 913-914).
Petitioner's procedural challenges are similarly unpersuasive. First, the Planning Board determined that a public hearing on the application for site plan approval was warranted (see Code of Town of Guilderland § 280-53 [G]), and petitioner argues that technical problems in broadcasting that hearing, which was held on two evenings in October 2020, led to a violation of the Open Meetings Law (see Public Officers Law art 7). Specifically, although the Planning Board is ordinarily "required to make reasonable efforts to ensure that meetings are held in an appropriate facility that can adequately accommodate members of the public who wish to attend such meetings" (Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d 1282, 1284 [2021] [internal quotation marks, brackets and citation omitted]), that requirement was lifted during the relevant period, and the Planning Board was only required to ensure that "'the public had the ability to view or listen to such proceeding and that such meetings were recorded and later transcribed'" (Matter of PSC, LLC v City of Albany Indus. Dev. Agency, 200 AD3d at 1284, quoting Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1] [brackets omitted]; see Public Officers Law §§ 102, 103 [d]; Executive Order [A. Cuomo] Nos. 202.65, 202.67 [9 NYCRR 8.202.65, 8.202.67]). The Planning Board accordingly conducted the hearing remotely and ensured that the public could see it live online and on two public access television channels. As petitioner notes, technical problems prevented the first 20 minutes of the hearing's second evening from being livestreamed online. The technical issues did not affect the airing of the hearing on television, however, and the full hearing was recorded and later placed online for viewing. The record further reflects that the individuals who called in to provide comments during the 20-minute outage could and did call back after the problem was fixed. Accordingly, even accepting that the temporary inability to use one of several options for viewing the public hearing violated the Open Meetings Law, that violation was an unintentional and technical [*6]one that "did not amount to 'good cause' for nullifying the" Planning Board's ensuing site plan approval, and Supreme Court properly found as much (Delgado v State of New York, 194 AD3d 98, 107 [2021], quoting Public Officers Law § 107 [1]; see Matter of New York Univ. v Whalen, 46 NY2d 734, 735 [1978]; Matter of Oakwood Prop. Mgt., LLC v Town of Brunswick, 103 AD3d 1067, 1070 [2013], lv denied 21 NY3d 853 [2013]).
Finally, we also agree with Supreme Court that the Planning Board was duly constituted and had the quorum necessary to render its SEQRA determination in August 2020 and grant site plan approval in October 2020. The Planning Board is constituted of seven members, one of whom resigned in August 2020, leaving the six remaining members to adopt the findings statement and grant site plan approval (see Town Law § 271 [1]; Code of Town of Guilderland § 280-47). The vacancy did not, however, render those actions invalid (see General Construction Law § 41; Matter of Wolkoff v Chassin, 89 NY2d 250, 254 [1996]; Matter of Empire State Restaurant & Tavern Assn. v Rapoport, 240 AD2d 576, 577 [1997]). To the contrary, "General Construction Law § 41 . . . allows valid action by a body so long as there is participation by 'a majority of the whole number' — defined as the total number that the body would have were there no vacancies or disqualifications" (Matter of Wolkoff v Chassin, 89 NY2d at 254; see Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 90-91 [2001]; see also Town Law § 271 [16]). The remaining six members of the Planning Board were a majority of the seven-member body, and it is undisputed not only that all six participated in the decisions to adopt the SEQRA findings statement and grant site plan approval, but that they unanimously agreed on those actions. Thus, as the Planning Board was duly constituted and "the quorum requirement was clearly satisfied" for its actions, they were proper (Matter of Newman v Parker, 174 AD2d 783, 784-785 [1991]).
Clark, Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Petitioner also suggests that the Planning Board failed to appropriately assess the traffic impacts of the project and related development, but we have already determined that the Planning Board took a hard look at those impacts and implemented appropriate remedial measures (Matter of Hart v Town of Guilderland, 196 AD3d at 913-914). Petitioner offers no compelling rationale for revisiting that point.

Footnote 2: Notably, only the site upon which the project was to be built was entitled to "partial protection" under the management plan of the Albany Pine Bush Preserve Commission. The Commission advised the Planning Board that the conveyance of other lands for inclusion in the preserve, in addition to other measures intended to mitigate the impact of the project, was "appreciated and consistent" with that state of affairs. The Commission further noted that the development of the other two sites was "unlikely to result in potentially significant adverse impacts" on the operation and maintenance of the preserve.