Matter of Friends of the Shawangunks v Town of Gardiner Planning Bd. (2024 NY Slip Op 00478)

Matter of Friends of the Shawangunks v Town of Gardiner Planning Bd.

2024 NY Slip Op 00478

Decided on February 1, 2024 

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 1, 2024 

CV-22-2337
[*1]In the Matter of Friends of the Shawangunks, Appellant,
v
Town of Gardiner Planning Board et al., Respondents.

Calendar Date:December 13, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, McShan and Mackey, JJ.

Pace Environmental Litigation Clinic, White Plains (Todd D. Ommen of counsel), for appellant.
Young/Sommer LLC, Albany (William A. Hurst of counsel), for Town of Gardiner Planning Board, respondent.
Riseley and Moriello, PLLC, Kingston (Michael A. Moriello of counsel), for John Alexander, respondent.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Kevin R. Bryant, J.), entered December 2, 2022 in Ulster County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Gardiner Planning Board approving respondent John Alexander's request for subdivision approval and a special use permit.
In August 2021, respondent John Alexander filed an application with respondent Town of Gardiner Planning Board to subdivide his approximately 108-acre parcel into two lots and obtain a special use permit to construct a new single-family dwelling and accessory structures. Lot 1 would consist of an existing residence on approximately five acres, and Lot 2 would host the new dwelling and be comprised of the remaining acreage, over 80% of which would be permanently preserved as open space conservation area (see Town of Gardiner Municipal Code §§ 220-20 [G] [2]; 220-21). All 108 acres fall within the Shawangunk Ridge Protection District (hereinafter the SP District) (see Town of Gardiner Municipal Code § 220-16). That special district is divided into three subdistricts in order to create a graduated system of regulation based upon elevation, the "least restrictive" regulation being at the bottom of the ridge slope in the SP-1 Subdistrict, "more restrictive" regulation occurring at the middle of the slope in the SP-2 Subdistrict and the "most restrictive" regulations applying to the highest elevations in the SP-3 Subdistrict (Town of Gardiner Municipal Code § 220-16 [C]). Proposed Lot 1 would be located exclusively within SP-1, and Lot 2 would span SP-1 to SP-3. The proposed building site on Lot 2 is within SP-2, just feet above the SP-1 boundary line, in an area previously disturbed by logging and approximately half a mile from Shawangunk Ridge. The Planning Board, as the lead agency for purposes of conducting a review of the project under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), ultimately adopted a negative declaration of environmental significance and granted the application in full. Petitioner commenced the instant proceeding thereafter, arguing that the approval was in violation of the Town of Gardiner Municipal Code (hereinafter the Town Code) and SEQRA. Respondents each answered and raised the defense of standing, among others. Supreme Court agreed that petitioner lacked standing to challenge the administrative determination and dismissed the petition. This appeal ensued.
As relevant here, for an organization to have standing to bring a CPLR article 78 proceeding challenging administrative decision-making, it must show that "one or more of its members would have standing to sue[,] . . . that the interests it asserts are germane to its purposes so as to satisfy the court that it is an appropriate representative of those interests . . . [and] that neither the asserted claim nor the appropriate relief requires the participation of the individual members[*2]" (Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 775 [1991]; see Matter of Mental Hygiene Legal Serv. v Daniels, 33 NY3d 44, 51 [2019]). Respondents' challenges to petitioner's standing is premised solely upon petitioner's ability to demonstrate standing on the part of one of its members. To establish a member's standing, petitioner was required to show "[t]he existence of an injury in fact" and "that the in-fact injury of which it complains (its aggrievement, or the adverse effect upon it) falls within the zone of interests, or concerns, sought to be promoted or protected by the . . . provision [of law] under which the [administrative body] has acted" (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 772-773 [internal quotation marks and citation omitted]; see New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]). "The injury-in-fact requirement necessitates a showing that the party has an actual legal stake in the matter being adjudicated and has suffered a cognizable harm that is not tenuous, ephemeral, or conjectural but is sufficiently concrete and particularized to warrant judicial intervention" (Mental Hygiene Legal Serv. v Daniels, 33 NY3d at 50 [internal quotation marks and citations omitted]; see Matter of Stevens v New York State Div. of Criminal Justice Servs., ___ NY3d ___, ___, 2023 NY Slip Op 05351, *4 [Oct. 24, 2023]). Additionally, in land use matters, courts have repeatedly emphasized that the harm "must be 'different in kind or degree from the public at large' " (Matter of Sierra Club v Village of Painted Post, 26 NY3d 301, 311 [2015], quoting Society of Plastics Indus. v County of Suffolk, 77 NY2d at 778; see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d 297, 306 [2009]).
Petitioner identified two members of its organization in its efforts to establish standing. The first member, petitioner's president, resides in the Hamlet of High Falls, Ulster County and has a clear interest and history of participation in the environmental conservation of the Shawangunk Mountains. He and his family had visited the area since his birth, and, in 1995, he moved there permanently. That member has "been hiking within the Ridge for years," and it would affect him "on an emotional level to potentially see the fragile ecosystem destroyed by development" in the SP-2 and SP-3 Subdistricts. He asserts that the proposed project "will result in the destruction of a portion of the fragile ecology in the higher elevations," and, as a result, he "would suffer an irreparable harm to [his] recreational interests[,] including hiking, exploring, and observing the flora and fauna that is specific to the area." The second member, petitioner's secretary, resides in the Town of Wallkill, Ulster County "at the bottom of the Ridge" and three quarters of a mile from a trail entrance. That proximity allows her to use Shawangunk Ridge for "recreation activities and aesthetic enjoyment .[*3]. . at least every other day [by] hiking or walking [her] dogs." She asserts that "[t]his type of development in the SP-2 zone would greatly detract from" that aesthetic and recreational enjoyment. Her concerns, however, have always been less about the viewshed and more about conserving the undeveloped land for the animals that reside there. Like the other member, "[f]urther development within the SP-2 zone would cause [her] a great deal of personal pain due to the time and energy [she has] invested in fighting to preserve" the ridge.
" '[I]nterest' and 'injury' are not synonymous" (Matter of Citizens Emergency Comm. to Preserve Preserv. v Tierney, 70 AD3d 576, 576 [1st Dept 2010], lv denied 15 NY3d 710 [2010]). However, as courts have repeatedly recognized, standing rules should not be applied heavy-handedly (see Matter of Association for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation, 23 NY3d 1, 6 [2014]; Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 413 [1987]). In our view, the foregoing allegations go further than mere interest in environmental conservation, and, in context, they are sufficient to demonstrate injury-in-fact in this land use matter (see Matter of Save the Pine Bush, Inc. v Common Council of City of Albany, 13 NY3d at 305-306; Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1440 [3d Dept 2020]; Matter of Protect the Adirondacks! Inc. v Adirondack Park Agency, 121 AD3d 63, 69 n 3 [3d Dept 2014], lv dismissed & denied 24 NY3d 1065 [2014]; Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Saratoga Springs, 46 AD3d 979, 982-983 [3d Dept 2007], lv denied 10 NY3d 706 [2008]; compare Matter of Hohman v Town of Poestenkill, 179 AD3d 1172, 1174 [3d Dept 2020]; Matter of Clean Water Advocates of N.Y., Inc. v New York State Dept. of Envtl. Conservation, 103 AD3d 1006, 1008-1009 [3d Dept 2013], lv denied 21 NY3d 862 [2013]; Matter of Powers v De Groodt, 43 AD3d 509, 513 [3d Dept 2007]; Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven, 213 AD2d 484, 485 [2d Dept 1995]). To the extent that the second prong of the standing inquiry is at issue, we find that the claimed injuries to the members' aesthetic use and enjoyment of Shawangunk Ridge fall within the zone of interests sought to be protected by both SEQRA and the Town Code provisions at issue (see Society of Plastics Indus. v County of Suffolk, 77 NY2d at 777; Town of Gardiner Municipal Code § 220-16 [A], [B]).
Turning to the merits, petitioner first argues that the Planning Board's determination is irrational and contrary to law because the proposed project violates the Town Code requirement that "permitted construction occur at the lowest feasible elevation on the property" (Town of Gardiner Municipal Code § 220-16 [F] [1] [b] [emphasis added]). In petitioner's view, this unambiguous language requires that [*4]Alexander's property, spanning all three subdistricts, be evaluated as a whole, whereas the Planning Board allegedly considered only sites in the subdistricts where a special use permit would be required. Petitioner maintains that there were feasible build sites at lower elevations on Lot 2, within the SP-1 Subdistrict.
Deference to a local board's interpretation of a zoning ordinance "is not required where the issue presented is one of pure legal interpretation" (Matter of Grout v Visum Dev. Group LLC, 197 AD3d 1404, 1406 [3d Dept 2021] [internal quotation marks, ellipsis and citations omitted]; see Matter of Lavender v Zoning Bd. of Appeals of the Town of Bolton, 141 AD3d 970, 972 [3d Dept 2016], appeal dismissed 28 NY3d 1051 [2016], lv denied 29 NY3d 907 [2017]). Town Code § 220-16 (F) sets forth "[s]pecial resource protection design requirements for the SP District" (Town of Gardiner Municipal Code § 220-16 [F]). Under "[p]urpose and applicability," subsection F mandates that "[a]ll development requiring a special permit within the SP District that requires review by the Planning Board, Town Board, or Zoning Board of Appeals shall comply with the standards in . . . [s]ubsection F" (Town of Gardiner Municipal Code § 220-16 [F] [1] [a]).[FN1] The language at issue is found in Town Code § 220-16 (F) (1) (b) and provides that "[t]he Planning Board shall insert conditions on any approval . . . as necessary to satisfy the requirements of . . . [s]ubsection F or any other part of . . . [section] 220-16. Such conditions shall include the requirement that permitted construction occur at the lowest feasible elevation on the property."
Town Code § 220-16 (F) expressly applies to construction that requires a special permit. As previously noted, the Town Code utilizes a graduated system of regulating land use within the SP District (see Town of Gardiner Municipal Code § 220-16 [C]), and, unlike SP-2 and SP-3, SP-1 allows single-family dwellings as of right. Thus, no special use permit is necessary for such construction (compare Town of Gardiner Municipal Code § 220-10 [B], with Town of Gardiner Municipal Code § 220-16 [I]). Accordingly, when the Town Code is read as a whole, the requirement that the Planning Board impose a lowest feasible elevation condition on a special permit cannot be said to apply to build sites falling within SP-1, where no such permit is required. There was thus no requirement that the Planning Board undertake review of alternative build sites in SP-1 in order to satisfy Town Code § 220-16 (F) (1) (b).[FN2]
As for SEQRA, petitioner does not claim that there are potential environmental impacts that the Planning Board overlooked or failed to assess. Rather, petitioner argues that because Alexander, a trained biologist and forestry professional, performed his own conservation analysis (see generally Town of Gardiner Municipal Code § 220-20 [A] [2]), a potential conflict existed and a "third-party check" should have been conducted (see generally [*5]Town of Gardiner Municipal Code § 220-16 [F] [2] [b]). In other words, petitioner asserts that, by allegedly not taking steps to mitigate potential bias, the Planning Board failed to take the requisite hard look at the project.[FN3]
"This Court will not disturb a SEQRA determination so long as the lead agency identified the pertinent areas of environmental concern, took a hard look at them and advanced a reasoned elaboration of the grounds for its determination. Our sole function, in short, is to assure that the agency has satisfied SEQRA, procedurally and substantively, and we neither can nor will evaluate data de novo, weigh the desirability of any particular action, choose among alternatives or otherwise substitute our judgment for that of the agency" (Matter of Save the Pine Bush, Inc. v Town of Guilderland, 205 AD3d 1120, 1123 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]). Our review confirms that the Planning Board considered and relied upon an extensive administrative record — including objections to Alexander performing his own conservation analysis and a consulting professional engineer's review of same — in reaching the conclusion of no significant adverse environmental impact. In this respect, nothing more was required to satisfy SEQRA.
Lynch, Reynolds Fitzgerald, McShan and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Town Code § 220-10, regarding allowable uses generally, similarly directs that use regulations for SP-2 and SP-3 are contained in Town Code § 220-16 (see Town of Gardiner Municipal Code § 220-10 [B]; see also Town of Gardiner Municipal Code § 220-16 [I]).

Footnote 2: That said, it is nonetheless clear from the record that both the Planning Board and Alexander considered several potential build sites within SP-1, ultimately finding that they were not feasible.

Footnote 3: Petitioner expressly does not challenge Alexander's qualifications.