[634 NYS2d 899]

In the Matter of VALLEY REALTY DEVELOPMENT COMPANY, INC.,
Respondent-Appellant, v THOMAS C. JORLING, as Commissioner of the New York State Department of Environmental Conservation, et al., Appellants-Respondents.

Fourth Department, November 15, 1995

### APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Michael J. Moore, Victoria A. Graffeo, Peter H. Schiff* and *Douglas H. Ward* of counsel), for appellants-respondents.

*Devortsetz Stinziano Gilberti Heintz & Smith, P. C.,* Syracuse *(Laurel J. Eveleigh* and *Patricia A. Serventi* of counsel), for respondent-appellant.

### OPINION OF THE COURT

Boehm, J.

In this CPLR article 78 proceeding, respondents New York State Department of Environmental Conservation and its Commissioner, Thomas C. Jorling (collectively, DEC), appeal from so much of the judgment of Supreme Court as granted in part the petition of petitioner, Valley Realty Development Company, Inc. (Valley), and denied DEC's motion to dismiss. Valley cross-appeals from so much of the judgment as denied its request for a determination that it had satisfied all applicable statutory and regulatory requirements to obtain a mining permit.

### I

In 1989 Valley purchased approximately 392 acres of land in the Town of Tully (Town) for the purpose of continuing a sand

and gravel mining operation that, according to Valley, had been carried on there for over 30 years. The land was then zoned "M-Mining", a zone that permits mining subject to the issuance of a special permit. On June 1, 1990, Valley submitted an application to DEC for a mined land reclamation permit as required under the Mined Land Reclamation Law (ECL art 23, tit 27). Within a few days thereafter, on June 6, 1990, Valley also applied to the Town for the necessary special mining permit. Instead of granting the permit, the Town enacted a local law rezoning all M-Mining districts to R-1 residential, but the law failed on procedural grounds. Thereafter, on April 8, 1991, the Town enacted a local law that again rezoned all M-Mining districts to R-1 residential. The new zoning no longer permitted mining on Valley's property. Supreme Court upheld the ordinance as valid and we affirmed *(Matter of Valley Realty Dev. Co. v Town of Tully,* 187 AD2d 963, *lv denied* 81 NY2d 880).

Valley, however, continued its application for a mining permit from DEC and, in response to DEC's continuing requests, filed a succession of voluminous Draft Environmental Impact Statements. Additionally, between June 4, 1990 and March 24, 1993, Valley submitted responses to repeated Notices of Incomplete Application (NOIA) from DEC, generally requiring further information from Valley. On March 24, 1993, in a final NOIA, DEC advised Valley that its mining application was not only incomplete but that it would "remain so until such time as *[Matter of Valley Realty Dev. Co. v Town of Tully (supra)* was reversed or the local law was amended] to the effect that mining is not prohibited at that location." DEC refused to process Valley's application any further.

## II

The Mined Land Reclamation Law established a detailed legislative framework under which DEC is empowered to regulate mining and the reclamation of mined lands and to promulgate and enforce rules and regulations for such purposes. The law expressly supersedes all "local laws relating to the extractive mining industry" (ECL 23-2703 [2]). Its purpose is to encourage mining through standardization of regulations pertaining to mining operations and to protect the environment. To that extent, it preempts all local laws that attempt to control or regulate extractive mining operations. It does not, however, curtail a town's power to adopt zoning laws nor does it preclude a town board "from deciding whether a

mining operation—like other uses covered by a zoning ordinance—should be permitted or prohibited in a particular zoning district [citations omitted]" *(Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 133; *see also, Matter of Hoffay v Tifft,* 164 AD2d 94). In 1991, amendments to ECL 23-2703 (2) (a) and (b) (L 1991, ch 166, § 228) codified the decision in *Matter of Frew Run Gravel Prods. v Town of Carroll, (supra)* by "explicitly allowing local laws of general applicability and local zoning" (Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 23-2703, 1995 Pocket Part, at 142).

The Town was, therefore, within its power in adopting a zoning ordinance that prohibited mining in a district previously zoned M-Mining, and we so held *(Matter of Valley Realty Dev. Co. v Town of Tully, supra).* The only issues before us at that time, however, were whether the Town failed to satisfy the requirements of the State Environmental Quality Review Act and whether a Town-wide prohibition of mining was constitutional. As the trial court properly held, our prior decision did not decide the issue presently before us and DEC's motion to dismiss on the ground of collateral estoppel was properly denied.

 DEC argues that its refusal to process Valley's application is required by ECL 23-2711 (2) (c), which provides that a complete application for a new mining permit shall contain "a statement by the applicant that mining is not prohibited at that location." That argument, however, ignores the power and duty of DEC "to issue permits in accordance with the criteria set forth in this article and the rules and regulations promulgated thereunder" (ECL 23-2709 [1] [a]). DEC has issued for its use and guidance Technical Guidance Memorandum MLR-92-2, dated May 4, 1992, entitled "Implementation of the New Mined Land Amendments in Regard to Permit Processing." The Memorandum provides that, "[i]n all cases if the local government indicates at any time before completeness that mining is prohibited, the Department will continue to process to completeness." The Memorandum further provides that, if DEC is advised that mining is prohibited, "[t]he permit, if one is issued, will not contain any special conditions regarding local prohibition if one exists, beyond the general advisory that issuance of a DEC permit does not relieve the applicant of the need to obtain any required local permits or approvals, and a notation that the local government has declared that mining is prohibited at this location."

Thus, by virtue of its own internal guidance rules, DEC should continue to process a mining application even where mining is prohibited by local law. The single exception to that rule is found in ECL 23-2703 (3), which prohibits DEC from processing a mining application if a local zoning law prohibits mining within an area in counties having a population of one million or more and whose primary source of drinking water is from a designated sole source aquifer. By contrast, there is no comparable prohibition with respect to ECL 23-2711 (2) (c), which requires that a complete application shall contain "a statement by the applicant that mining is not prohibited at that location." The absence of a similar prohibition is an indication by the Legislature that the processing of a mining permit application proceed even where a local law prohibits mining.

Thus, DEC improperly relied upon ECL 23-2711 (2) (c) to condition the processing of Valley's mining application upon the Town's zoning. As we have already noted, according to DEC's own Technical Guidance Memorandum, the prohibition of mining by a town does not compel the DEC to discontinue processing a mining application. "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices * * * the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld [citations omitted]" *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459; *see also, Matter of Howard v Wyman,* 28 NY2d 434, 438, *rearg denied* 29 NY2d 749). Further, "absent a contrary expression by the Legislature, local zoning decisions are distinct from and do not affect substantive determinations rendered by the DEC with respect to permit applications" *(Tayntor v New York State Dept. of Envtl. Conservation,* 130 AD2d 571, 573; *see also, Matter of Town of Poughkeepsie v Flacke,* 84 AD2d 1, *lv denied* 57 NY2d 602).

Thus, the court properly held that DEC may not halt the processing of Valley's mining application.

### III

■ The court should, however, have directed DEC to advise Valley that its mining application is complete. The Uniform Procedures Law (ECL art 70) establishes a uniform procedure and specific time periods for the processing of permit applications by DEC. It requires that, when DEC determines that an application is not complete, its notice of incomplete application

"shall include a concise statement of the respects in which the application is incomplete" (ECL 70-0109 [1] [c]). That instruction is also found in the New York Codes, Rules and Regulations. "If the application is determined to be incomplete, the notice shall include a brief statement indicating all identified areas of incompleteness" (6 NYCRR 621.5 [c]).

The only concise statement in DEC's final NOIA of March 24, 1993, is a reference to the necessity of eliminating the prohibition of mining in the Town. The NOIA gratuitously then goes on to state that when mining is no longer prohibited "we will decide on the Completeness of your application, together with any issues remaining on the DEIS", i.e., that there may be other matters DEC may want resolved but Valley will be informed of them in due time. That, however, is hardly the statutorily required "concise statement of the respects in which the application is incomplete." Further, the statement in the NOIA regarding the prohibition of mining is not a proper basis for considering the application incomplete. With the single exception referred to, a town's prohibition of mining is not within the purview of DEC. As discussed, DEC may not make zoning a condition of the application, and the court properly so held. Because zoning was not an appropriate matter for consideration by DEC, there was nothing left in the NOIA to render the application incomplete. Under the statute, therefore, DEC is required to regard the application as complete and to inform Valley accordingly pursuant to ECL 70-0109 and 6 NYCRR 621.5 (b).

That does not, however, compel the immediate issuance of a mining permit to Valley. The notification that an application is complete is not the equivalent of approval of the application *(see, Onondaga Landfill Sys. v Flacke,* 81 AD2d 1022, 1023-1024). When an application is complete that is not the end of the process. DEC must then determine whether to conduct a public hearing pursuant to ECL 70-0119. DEC must also give the required notices of the application *(see,* ECL 70-0109, 23-2711; 6 NYCRR 621.6, 621.7; *Onondaga Landfill Sys. v Flacke, supra).*

DEC's response of August 27, 1993 to Valley's five-day demand for a decision *(see,* ECL 70-0109 [3] [b]) was not such a failure to comply with the Uniform Procedures Law as to require that a mining permit be issued. In its response to that demand, DEC reiterated that Valley's application was incomplete because of the Town's zoning and that DEC would, therefore, take no further action on the application. DEC then

tacked on five additional "unresolved discrepancies and significant issues". DEC may not, however, raise new issues as "unresolved" when those issues were not concisely stated in a previous NOIA.

The Uniform Procedures Law was enacted "to establish reasonable time periods for administrative agency action on permits" (ECL 70-0103 [3]). "Upon signing the bill into law, Governor Hugh L. Carey listed as a first major provision of the bill the fact that it included 'a requirement that the Department give written notice to an applicant within 15 days after the receipt of an application that the application is complete, or a statement of what additional information is needed' [citation omitted]" *(Matter of Atlantic Cement Co. v Williams,* 129 AD2d 84, 90 [emphasis added]; *see,* ECL 70-0109; 6 NYCRR 621.5 [b]). Not having identified areas of incompleteness in what purports to be its final NOIA, DEC may not do so in a subsequent NOIA. Permitting DEC to do so would enable it to deliberately delay the application process by endless requests for information not previously requested. That is the very thing the statute seeks to avoid.

Nevertheless, the failure of DEC to issue a decision within five business days after Valley's demand for a final determination does not require that a mining permit be granted. As DEC correctly contends, a five-day demand may not be made until the "incompleteness" in an application is first cured *(see, Matter of Guptill Holding Corp. v Williams,* 140 AD2d 12, 19-20, *lv denied* 73 NY2d 820; *Tayntor v New York State Dept. of Envtl. Conservation, supra,* at 572-573). The fact that the basis for incompleteness given by DEC in its final NOIA was erroneous does not vitiate the requirement that incompleteness be first cured. That cure must be effected, whether by the applicant or by the decision of a court, as the court did here, in order for the automatic approval provisions of ECL 70-0109 (3) (b) to come into play.

## IV

Accordingly, the judgment on appeal should be modified by directing DEC to inform Valley that its application is complete and directing DEC to proceed thereafter as required by the Uniform Procedures Law and the regulations thereunder, and otherwise should be affirmed.

PINE, J. P., LAWTON, WESLEY and DAVIS, JJ., concur.

Judgment unanimously modified, on the law, and as modified, affirmed, with costs to petitioner, in accordance with the opinion by BOEHM, J.