■ In the Matter of SAVE EASTON ENVIRONMENT et al., Petitioners, v LANGDON MARSH, as Acting Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. [650 NYS2d 860] —Crew III, J. Proceeding pursuant to CPLR article 78 and action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Albany County) to, *inter alia*, review a determination of the Department of Environmental Conservation which issued a mining permit to respondent Peckham Materials Corporation.

In February 1989, respondent Peckham Materials Corpora-

---

tion submitted a permit application to the Department of Environmental Conservation (hereinafter DEC) for a sand and gravel mine located in the Town of Easton, Washington County. DEC issued a "positive declaration", finding that the project would potentially have a significant effect upon the environment, thereby triggering the preparation of a draft environmental impact statement (hereinafter DEIS).

Following a public hearing on the proposed project, an Administrative Law Judge (hereinafter ALJ) conducted a pre-adjudicatory issues conference, as a result of which Peckham ultimately was directed to prepare a supplemental draft environmental impact statement (hereinafter SDEIS) to address certain issues that had not been fully explored in the DEIS, including the potential impact that the project might have upon groundwater, wildlife species, and archaeological and historic resources. The SDEIS subsequently was accepted for public comment and review.

Ultimately, following an administrative hearing, a site visit and an additional issues conference, the ALJ prepared a hearing report recommending that Peckham be granted the requested permit. In January 1994, respondent Commissioner of Environmental Conservation* adopted the ALJ's findings of fact and conclusions of law and directed that a permit be issued to Peckham. Peckham was issued such a permit effective March 21, 1994.

Petitioners thereafter commenced this combined proceeding pursuant to CPLR article 78 and action for declaratory judgment raising numerous claims challenging, *inter alia*, the Commissioner's decision to grant Peckham the mining permit. Peckham successfully intervened, and the Commissioner, respondent Commissioner of Transportation, respondent Commissioner of Parks, Recreation and Historic Preservation and Peckham each separately moved to, *inter alia*, dismiss portions of the petition. Ultimately, Supreme Court, *inter alia*, dismissed the ninth, eleventh, twelfth, thirteenth and fourteenth causes of action. Respondents subsequently answered and the matter was transferred to this Court for review.

Petitioners, citing what they perceive to be deficiencies in the draft, supplemental and final environmental impact statements filed in this matter, initially contend that DEC failed to

---

* At the time that this decision was made, Thomas Jorling was the Commissioner of Environmental Conservation. When this proceeding was commenced, however, Langdon Marsh was the Acting Commissioner of Environmental Conservation. For purposes of this decision, all references to either Jorling or Marsh will be to "the Commissioner".

comply with the requirements of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) in issuing the subject permit. Based upon our review of the record as a whole, and more particularly the documents in issue, we cannot say that DEC failed to identify the relevant areas of environmental concern, take a "hard look" at those areas and make a "reasoned elaboration" as to the basis for its decision (*see, Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417). The mere fact that petitioners' concerns regarding certain aspects of the project were not resolved in their favor does not mean that DEC failed to discharge its statutory obligations under SEQRA.

Petitioners next contend that the record fails to support the findings made with respect to the tree planting plan and the impact that the mining project would have upon the groundwater in the area. We cannot agree. With respect to the tree planting plan, which was designed to mitigate the project's visual impact upon the surrounding area, numerous witnesses testified as to the specifics of the plan and the likelihood of its success. Indeed, the record is replete with testimony that the depth of the topsoil, climate conditions and site location all were suitable for growing the trees selected (poplars and pines), that the estimated survival rate was both reasonable and achievable and, finally, that the plan in question would be successful. Similar testimony was offered regarding the groundwater issue, with several witnesses concluding that the mining project and accompanying operations would not cause damage to neighboring wells or springs.

Similarly unpersuasive is petitioners' claim that the potential impact upon archaeological and historic resources were not sufficiently investigated and mitigated by DEC. In accordance with PRHPL 14.09, an agency must consult with the Commissioner of Parks, Recreation and Historic Preservation before undertaking or approving a project that may have a potential change, be it beneficial or adverse, to historic, architectural, archaeological or cultural resources that are eligible for or listed on the State or national registers of historic places. Contrary to petitioners' assertions, DEC had extensive contact with the Office of Parks, Recreation and Historic Preservation (hereinafter OPRHP) regarding the potential impacts that the project might have upon such resources on the site.

Initially, the record reveals that an archaeological survey of the site was conducted, with the final report concluding that the site was not "particularly favorable to human occupation"

given the topography, soil quality and limited access to water. Specifically, no evidence of Native American or European activity was found on the site and, after reviewing this survey, OPRHP concluded that no further archaeological review of the area was necessary. When petitioners thereafter alleged, however, that a Revolutionary War era cellar hole and a Native American fire mound were present on the site, the ALJ ordered a site visit. Although petitioners' claims in this regard proved to be unfounded, the subsequent discovery of certain ceramic fragments on the site triggered yet another survey and resulted in DEC adding a special condition to the mining permit regarding the discovery and recovery of any archaeological materials located on the site. When it ultimately was determined that an archaeological site eligible for inclusion in the historic registers indeed existed on the property, Peckham agreed to create an avoidance plan for this area, which was endorsed by OPRHP. In light of this and other evidence in the record, it cannot be said that DEC failed to comply with the requirements of PRHPL 14.09.

Petitioners' remaining contentions, including their assertion that the ALJ committed certain procedural errors in the conduct of the administrative proceeding and that Supreme Court erred in dismissing certain causes of action contained in the petition, have been examined and found to be lacking in merit.

Mikoll, J. P., White, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.