Matter of Van Dyk v Town of Greenfield Planning Bd. (2021 NY Slip Op 00062)





Matter of Van Dyk v Town of Greenfield Planning Bd.


2021 NY Slip Op 00062


Decided on January 7, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 7, 2021

529799

[*1]In the Matter of James Van Dyk et al., Appellants,
v
Town of Greenfield Planning Board, Respondent, et al., Respondents.

Calendar Date: November 24, 2020

Before: Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Braymer Law, PLLC, Glens Falls (Claudia K. Braymer of counsel), for appellants.
Miller, Mannix, Schachner & Hafner, LLC, Glens Falls (Leah Everhart of counsel), for Town of Greenfield Planning Board, respondent.



Lynch, J.P.
Appeal from a judgment of the Supreme Court (Crowell, J.), entered July 9, 2019 in Saratoga County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a resolution of respondent Town of Greenfield Planning Board approving the site plan of respondent Stewart's Shops Corp.
In 2003, respondent Stewart's Shops Corp. (hereinafter Stewart's) received approval from respondent Town of Greenfield Planning Board for a four-phase development plan to construct a manufacturing and distribution center. The plan included a stormwater pollution prevention plan (hereinafter SWPPP) and a two-cell pond system to manage stormwater runoff from the site, which system was constructed in 2003. In August 2017, Stewart's applied to modify phase four of the plan, seeking to construct a warehouse in lieu of a previously approved parking lot. Following a lengthy review process, which included numerous public hearings and completion of a State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) full environmental assessment form (hereinafter FEAF), the Planning Board issued a negative declaration declaring that the modification would not have a detrimental environmental impact. The Planning Board then adopted a resolution in March 2019 approving the application. In April 2019, petitioners, as neighbors to the project site, commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking to vacate the Planning Board's approval for failing to adequately address the stormwater and wetland impacts. Finding that the Planning Board sufficiently identified and considered the environmental concerns raised in the application, Supreme Court dismissed the petition/complaint. Petitioners appeal.
Our review of the Planning Board's SEQRA determination "is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231-232 [2007] [internal quotation marks and citations omitted]). An agency decision may only be annulled "if it is arbitrary, capricious or unsupported by the evidence" (id. at 232).
In support of its 2017 application, Stewart's submitted an updated SWPPP and a Stormwater Management Report (hereinafter SMR) prepared by its retained engineers, MJ Engineering and Land Surveyors, P.C. Stewart's also submitted updated calculations to address the pond's functionality and capacity, a downstream drainage analysis to address the roadside drainage, a geotechnical report regarding excavation near the pond system and the FEAF. These submissions contemplated the continued use of the 2003 stormwater system. The SMR explained that a change from a parking lot to a warehouse would increase the impervious area from 73,400 square feet to 93,300 square [*2]feet, resulting in an increase of stormwater runoff that the existing pond system could accommodate. The SMR also proposed adding a grass swale along the perimeter of the warehouse. The SMR determined that the "proposed improvements for the project site meet or exceed water quantity, runoff reductions and water quality requirements as specified in the 2011 [Department of Environmental Conservation (hereinafter DEC)] [Stormwater Design Manual] guidelines." The downstream drainage analysis recommended removing a roadside culvert limiting runoff capacity and the culvert was removed. Upon review of these submissions, the Town's engineer, Charles Baker, advised the Planning Board in writing that the existing pond system could handle the increased stormwater runoff and conformed to current DEC standards. In our view, this review process demonstrates that the Planning Board identified and took a hard look at the stormwater issue and made a reasoned determination that the capacity of the existing system was adequate to handle the increase in stormwater runoff.
The further question is whether the modification would negatively impact federal wetlands, a concern raised by petitioners and the Town's Environmental Commission. By letter dated March 1, 2018, DEC advised that the project did not require any state wetland permit. In June 2018, a representative of the United States Army Corps of Engineers (hereinafter USACOE) informed petitioners that Stewart's advised that it would not seek a written verification of the wetland boundaries from the USACOE because the project was designed to avoid delineated wetlands. Petitioners maintain that the Planning Board erred in failing to obtain a determination from the USACOE concerning federal wetlands in the area of the pond. Through a presentation by Carl Holzworth, formerly employed as a biologist in DEC's wetland permit program, petitioners asserted that the ponds were likely sited within federal wetlands. Holzworth opined that additional drainage from the pond system would probably "impact water levels in those wetlands in the forest." By memorandum dated September 29, 2018, the Environmental Commission specifically requested that the Planning Board consult with the USACOE regarding the additional stormwater generated by the project.
Previously, Stewart's submitted a letter, dated March 13, 2018, to the Planning Board advising that "this past spring the LA Group completed a wetland delineation to help us identify plausible limits of construction (copy enclosed) . . . [and] we are comfortable asserting that the existing site plan under consideration does not fall within [US]ACOE's jurisdictional review requirements and[,] as such[,] a determination on their part is not required." The Planning Board's meeting minutes from both February 27, 2018 and March 27, 2018 refer to the LA Group map and, in the latter meeting, specify that "[t]he Board has copies of the wetland delineation that the LA Group did." [*3]Baker addressed the federal wetlands issue in his October 26, 2018 letter to the Planning Board, noting "that the USACOE did not need to be contacted for the project, since there are no existing wetlands in the location of the proposed action, and there are no modifications being proposed to the stormwater management facility." In its March 2019 approval resolution, the Planning Board emphasized that it considered the concerns of the Town's Environmental Commission and referred to Baker's letter. The Planning Board approved the project without USACOE involvement.
The foregoing demonstrates that the Planning Board relied on the wetland map submitted by Stewart's and as interpreted by Baker to conclude that the project did not implicate any federal wetlands. Supreme Court noted as much in its decision. We are mindful that the record on appeal does not include any map identified as a wetland delineation prepared by the LA Group. The discrepancy is addressed in Baker's answering affidavit in this proceeding, wherein he explains that 2003 submissions by Stewart's "included a wetland delineation map (prepared by Santo Associates, dated April 17, 2003)" and identified that map as the one that Stewart's submitted with the March 13, 2018 letter. Baker observed that "[t]he wetland delineation map prepared in 2003 shows a sliver of wetlands located on the south of the existing stormwater basin, outside the limits of the proposed stormwater management area and access road." The administrative record included in the record on appeal shows that the letter submitted by Stewart's on March 13, 2018 included a map prepared by Santo Associates, not the LA Group.[FN1] Moreover, petitioners concede that the Santo Associates map was presented to the Planning Board. This map shows that a narrow wetland strip exists south of the stormwater pond as explained by Baker. Consistent with the March 13 letter from Stewart's advising that a wetlands delineation had been completed the previous spring, the map also includes wetlands revisions added in March 2017 and May 2017. Given Baker's opinion that the wetlands were situated outside the stormwater management area, the Planning Board could rationally conclude that a consultation with the USACOE was unnecessary and that the project would not compromise any federal wetlands. In view of the above, the Planning Board's determination in the FEAF that the modification would have no impact on surface waters is supported by the evidence and validates the Planning Board's negative declaration for SEQRA purposes.
Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: The record copy of the Santo Associates map is illegible. At the Court's request during oral argument, the Planning Board's counsel has submitted a clear copy of this map. We recognize that the newly submitted map includes revisions made after the Planning Board's determination under review, but those revisions do not pertain to wetlands. As such, despite petitioners' objections, we will consider the map.