Matter of Town of Southampton v New York State Dept. of Envtl. Conservation (2021 NY Slip Op 03351)





Matter of Town of Southampton v New York State Dept. of Envtl. Conservation


2021 NY Slip Op 03351


Decided on May 27, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 27, 2021

529380 532083
[*1]In the Matter of Town of Southampton et al., Appellants, et al., Petitioner,
v
New York State Department of Environmental Conservation et al., Respondents. County of Suffolk, Proposed Intervenor- Appellant.

Calendar Date:February 9, 2021

Before:Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Law Offices of Thomas M. Volz, PLLC, Nesconset (David H. Arntsen of counsel), for Town of Southampton, appellant.
Tooher & Barone, LLP, Albany (Meave M. Tooher of counsel), for 101CO, LLC and others, appellants.
Dennis M. Cohen, County Attorney, Hauppauge (Elaine M. Barraga of counsel), for County of Suffolk, proposed intervenor-appellant.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for New York State Department of Environmental Conservation, respondent.
Matthews Kirst & Cooley, PLLC, East Hampton (Brian E. Matthews of counsel), for Sand Land Corporation and another, respondents.
Whiteman Osterman & Hanna LLP, Albany (John J. Henry of counsel), for Town of East Hampton and others, amici curiae.



Reynolds Fitzgerald, J.
Appeals (1) from an order of the Supreme Court (Ferreira, J.), entered September 13, 2019 in Albany County, which, in a proceeding pursuant to CPLR article 78, denied a motion by the County of Suffolk to intervene, and (2) from a judgment of said court, entered September 3, 2020 in Albany County, which, among other things, dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review two determinations of respondent Department of Environmental Conservation granting certain Mined Land Reclamation permits to respondent Sand Land Corporation.
Respondent Sand Land Corporation is the owner and permittee [FN1]
of a sand and gravel mine located on a 50-acre parcel of property in the Town of Southampton, Suffolk County, and respondent Wainscott Sand and Gravel Corporation operates the mine. In 2014, Sand Land and Wainscott Sand and Gravel (hereinafter collectively referred to as Sand Land) applied to respondent Department of Environmental Conservation (hereinafter DEC) for a modification permit seeking, as relevant here, a vertical and horizontal expansion of its mining operations. The proposed horizontal expansion consisted of 4.9 acres — 1.9 acres of previously unmined land and three acres known as the "stump dump."[FN2]
The vertical expansion sought to mine 40 feet deeper to a level of 120 feet above mean sea level. In April 2014, pursuant to the State Environmental Quality Review Act (see ECL art 8), DEC issued a negative declaration. A year later, DEC denied the permit.
Sand Land requested a hearing to challenge the denial of the 2014 permit application. The hearing produced two decisions from the Administrative Law Judge — a January 2018 ruling on a threshold procedural issue and a December 2018 ruling, among other things, denying Sand Land's motion to renew and reargue. Both rulings held that ECL 23-2703 prohibited DEC from processing mining permits for mines located in an area with a population of over one million people that draws its primary drinking water from a designated sole source aquifer,[FN3]
and that petitioner Town of Southampton has a local law prohibiting mining in the Town. In between these two administrative decisions, DEC, in September 2018, issued a notice of intent to modify to Sand Land, which stated that DEC was modifying the existing permit to require Sand Land to cease all mining activity other than reclamation.[FN4]
Also, in October 2018, Sand Land submitted an application to renew its mining permit. This application specified that 31.5 acres were to be included in the life of the mine and sought an increase in the depth of the mine by 40 feet.
In February 2019, DEC and Sand Land entered into a global settlement agreement settling all pending administrative proceedings. As relevant here, under the terms of the agreement, DEC agreed to rescind its notice to modify and issue a "renewal" permit for an expanded life of the mine boundaries and process Sand Land's October 2018 permit application to deepen [*2]the mine by 40 feet. The settlement was made expressly contingent on DEC's issuance of said permit, which it did. DEC issued the renewal permit in March 2019. Also, in March 2019, and relying on the prior 2014 negative declaration, DEC issued an amended negative declaration with respect to the permit to deepen the mine. In June 2019, DEC issued the modification permit granting Sand Land the authority to deepen the mine by 40 feet.
In April 2019, petitioners — the Town, several civic organizations and three neighboring landowners [FN5]
— commenced this CPLR article 78 proceeding seeking to annul the February 2019 settlement agreement, DEC's March 2019 amended negative declaration and DEC's March 2019 issuance of a renewal permit. Following DEC's issuance of another modification permit, in June 2019, petitioners filed a supplemental petition seeking to annul that permit. Meanwhile, in May 2019, the County of Suffolk moved to intervene and submitted a proposed petition asserting the same legal claims as the original petition. Respondents opposed the motion. In September 2019, Supreme Court denied the County's motion finding that the County lacked capacity to bring the claims set forth in the proposed petition against DEC as a subsidiary of the state. The County appeals from this order. In September 2020, Supreme Court dismissed the petition finding, as relevant here, no violation of ECL 23-2703 (3), as it does not apply to a modification application such as this one, which proposes only mining deeper within its existing footprint. Petitioners appeal from this judgment.
Initially, Supreme Court did not err in denying the County's motion to intervene. The County argues that authorization to intervene can be inferred from ECL 23-2703 (3) and 23-2711 (3) in conjunction with the County's role in protecting and monitoring groundwater quality. However, these statutes refer to the municipality that enacts local zoning laws. As such, the Town rather than the County would have the capacity to sue DEC. Likewise, the County's assertion that Suffolk County Charter § C16-2 confers capacity upon it is meritless, as "a generic grant of authority to sue or be sued [is] insufficient" (Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 NY3d 377, 386 [2017] [internal quotation marks omitted]; see Matter of Bethpage Water Dist. v Daines, 67 AD3d 1088, 1090-1091 [2009], lv denied 14 NY3d 707 [2010]). Although "[c]ourts may allow other interested persons to intervene in special proceedings, . . . this permissive determination lies within the court's discretion" (Matter of Pace-O-Matic, Inc. v New York State Liq. Auth., 72 AD3d 1144, 1145 [2010] [internal quotation marks and citation omitted]). We find no abuse of discretion in Supreme Court's decision.
Turning to substantive matters, the Mined Land Reclamation Law (see ECL 23-2701 et seq.) grants DEC broad authority to regulate the mining industry in the state. The law looks to encourage [*3]a sound mining industry, provide for the management of depletable resources and assure the reclamation of mined land. The Legislature sought to achieve these purposes through "the adoption of standard and uniform restrictions and regulations to replace the existing patchwork system of local ordinances" (Matter of Wallach v Town of Dryden, 23 NY3d 728, 745 [2014]). In order to assure this uniformity, the law contains an express supersession clause, which provides that the Mined Land Reclamation Law shall supersede all "local laws relating to the extractive mining industry" (ECL 23-2703 [2]). However, the Mined Land Reclamation Law does not supersede all local laws. In Matter of Frew Run Gravel Prods. v Town of Carroll (71 NY2d 126 [1987]), the Court of Appeals clarified the applicability of this supersession clause and differentiated between local laws pertaining to the actual operation and process of mining, which were subject to the clause, and other local laws, which fell outside its preemptive orbit. In determining that zoning ordinances are not subject to this clause, the Court stated that to do otherwise "would drastically curtail [a] town's power to adopt zoning regulations granted in [Statute of Local Governments § 10 (6)] and in Town Law § 261. Such an interpretation would preclude [a] town board from deciding whether a mining operation — like other uses covered by a zoning ordinance — should be permitted or prohibited in a particular zoning district" (id. at 134 [citations omitted]).
Although a review of the record evidences that the Town's local zoning laws prohibit zoning, because Sand Land's predecessor began operating in the 1950s — prior to the zoning restrictions now in place — mines such as Sand Land's are generally considered to be a legal prior nonconforming use and will be "permitted to continue, nothwithstanding the contrary provisions of the ordinance" (Glacial Aggregates LLC v Town of Yorkshire, 14 NY3d 127, 135 [2010] [internal quotation marks and citation omitted]). At the same time, although "prior nonconforming uses in existence when a zoning ordinance is adopted are, generally, constitutionally protected[,] . . . the law . . . generally views nonconforming uses as detrimental to a zoning scheme, and the overriding public policy of zoning in [this s]tate and elsewhere is aimed at their reasonable restriction and eventual elimination" (Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d 88, 97 [2009] [internal quotation marks, brackets and citations omitted]). Crucially, with respect to the case at bar, in 1991, the Legislature amended the Mined Land Reclamation Law to include the following provision: "No agency of this state shall consider an application for a permit to mine as complete or process such application for a permit to mine pursuant to this title, within counties with a population of one million or more which draw their primary source of drinking water for a majority of county residents from a designated [*4]sole source aquifer, if local zoning laws or ordinances prohibit mining uses within the area proposed to be mined" (ECL 23-2703 [3]). The amendment is an outlier in a statute whose purpose is to promote uniformity, as it articulates a mandate directed at a specific geographic area — Long Island, where the Town is located and where zoning laws prohibit mining.
Respondents argue that per DEC's interpretation, ECL 23-2703 (3) applies only to new permits or permits seeking substantial modifications. They contend that the matter before Supreme Court, wherein Sand Land sought a 40-foot vertical expansion within the existing footprint of the mine, was not a material change, as it did not request any horizontal expansion; as such, respondents contend that input from the Town was not required. Supreme Court agreed, characterizing an alternate interpretation would be "nonsensical."[FN6]
We disagree.
When interpreting a statute, we turn first to its text as the best evidence of the Legislature's intent. As a general rule, a statute's plain language is dispositive (see Riley v County of Broome, 95 NY2d 455, 463 [2000]). Here, ECL 23-2703 (3) provides that, in the event that an application for a permit is received from an applicant whose mine falls within an area described in the statute, the agency may not process the application if the local zoning laws prohibit same. ECL 23-2703 (3) is not vague or ambiguous; it is concise and clear. Contrary to all other permit applications received by DEC, an application received from an area protected under ECL 23-2703 (3) must be put on hold until the status of the local laws is determined (see Matter of Valley Realty Dev. Co. v Jorling, 217 AD2d 349, 354 [1995]). There is no qualification on what type of permit applications must be put on hold; rather, by its certain language, the statute applies to all applications. "'[A] court cannot amend a statute by inserting words that are not there'" (Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 363; accord Ronkese v Tilcon N.Y., Inc., 153 AD3d 259, 263 [2017]; see McKinney's Cons Laws of NY, Book 1, Statutes § 94 at 190 ["new language cannot be imported into a statute to give it a meaning not otherwise found therein"]). In keeping with this hornbook rule of construction, this Court declines to furnish modifiers. If the Legislature had intended to limit the type of permit applications to which it applied, it would have done so (see Matter of Marian T. [Lauren R.], 36 NY3d 44, 51-52 [2020]). After all, it very precisely limited the geographic area to which it applies. Given this unambiguous text, "deference to an administrative agency's special competence or expertise does not come into play where, as is the case here, we are called upon to decide a question of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (Matter of Polan v [*5]State of N.Y. Ins. Dept., 3 NY3d 54, 58 [2004] [internal quotation marks and citation omitted]).
ECL 23-2703 (3) clearly recognizes that the local laws of the municipality are determinative as to whether an application can be processed. Here, where it is unchallenged that the Town's laws prohibit zoning, DEC cannot process the application, let alone issue the permit. It cannot do by fiat what is prohibited under the law. Therefore, the act of issuing the permits here, in contravention of ECL 23-2703 (3), was arbitrary and capricious.
Garry, P.J., Egan Jr. and Colangelo, JJ., concur.
Pritzker, J. (concurring in part and dissenting in part).
Although I agree with the majority's opinion relative to the denial of the County of Suffolk's motion to intervene, I respectfully dissent because it is my opinion that ECL 23-2703 (3) and 23-2711 (3) are inapplicable and do not provide a basis to grant the petition.
Initially, ECL 23-2711 (3) is inapplicable to the modification permit at issue here as this particular subsection applies to properties "not previously permitted pursuant to this title" (see Joan Leary Matthews, Siting Mining Operations in New York - The Mined Land Reclamation Law Supersession Provision, 4 Alb L Envtl Outlook 9, 12 [Spring 1999]). As to ECL 23-2703 (3), this statute provides, in pertinent part, that "[n]o agency of this state shall consider an application for a permit to mine as complete or process such application for a permit to mine pursuant to this title, within counties with a population of one million or more which draw their primary source of drinking water for a majority of county residents from a designated sole source aquifer, if local zoning laws or ordinances prohibit mining uses within the area proposed to be mined" (emphasis added). It is undisputed that petitioner Town of Southampton is within the protected area and that the Town's zoning laws generally prohibit mining within its borders. Nevertheless, respondent Sand Land Corporation and respondent Wainscott Sand and Gravel (hereinafter collectively referred to as Sand Land) have a constitutionally protected prior nonconforming use "within the area proposed to be mined" (ECL 23-2703 [3]; see generally Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d 278 [1980]).[FN1]
This has been recognized not only by the Second Department (see Matter of Sand Land Corp. v Zoning Bd. of Appeals of Town of Southampton, 137 AD3d 1289, 1292 [2016], lv denied 28 NY3d 906 [2016]), but also by the Town, generally, in its local law, and, specifically, by virtue of its issuance of nonconforming use certificates of occupancy in 2011 and 2016. Simply stated, although the Town prohibits new mining operations within its borders, it has both recognized and permitted mining within "the area proposed to be mined" (ECL 23-2703 [3]) as a legitimate prior nonconforming use.[FN2]

The interpretation of ECL 23-2703 (3) by petitioners and the amici as applying to all permits is too broad [*6]and could render the law unconstitutional. Specifically, if this statute applies to all mining permits, including those based on prior nonconforming uses, then a municipality within the statutorily protected areas could effectively zone out the active and permitted mines throughout covered areas by simply legislating that no mining is permitted. Although a municipality can do so for new mines, and could even reasonably curtail and amortize prior nonconforming uses, it cannot terminate these uses in a wholesale fashion without running afoul of the Takings Clause (see Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d at 287; Philip Weinberg, Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL 23-2703 at 351-355). Overall, this statute achieves its remedial environmental goal while still recognizing and protecting vested constitutional rights. For example, although respondent Department of Environmental Conservation (hereinafter DEC) would not be prohibited from processing a modification permit relative to a mine operating within its prior nonconforming use, it would be prohibited from processing a permit for a new mine, or one seeking to expand outside of a prior nonconforming use, within a protected area.
This conclusion does not change even though the permit at issue is seeking a 40-foot vertical increase because such an increase may be reasonably viewed as a constitutionally protected expansion. As to mining, prior nonconforming uses may be expanded through exploitation of reserves (see Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d at 285-286; see also Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d 88, 98 [2009]). Of course, this does not mean that the permit had to be approved (see generally ECL 23-2711; ECL art 70), but rather that ECL 23-2703 does not prevent review by DEC. Nor does it mean that ECL 23-2703 (3) only applies to new mines. To the contrary, it also applies to expansions that exceed the established prior nonconforming use of an existing mine. As such, DEC's interpretation as to the statute's applicability is correct, as the requested expansion is within the existing footprint and clearly within the existing vertical reserves (see Buffalo Crushed Stone, Inc. v Town of Cheektowaga, 13 NY3d at 100; Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d at 285-286; compare Matter of Dolomite Prods. Co. v Kipers, 23 AD2d 339, 342 [1965], affd 19 NY2d 739 [1967]).
Finally, contrary to the amici's suggestions, the holding in Matter of Frew Run Gravel Prods. v Town of Carroll (71 NY2d 126 [1987]) does not compel a different result, nor does it support the proposition that DEC's actions somehow impaired the Town's municipal home rule authority. Matter of Frew Run Gravel Prods. holds that the Mined Land Reclamation Law does not totally preempt town zoning laws (id. at 133). If, for example, the Town wanted to eliminate all sand mining — current and grandfathered — within its borders via local law[*7], it could do so "provided that termination is accomplished in a reasonable fashion" (Matter of Syracuse Aggregate Corp. v Weise, 51 NY2d at 287). But here, the Town has not done so. Certainly, a municipality's right to home rule authority is not compromised by holding it accountable to its own law.[FN3]
 Accordingly, as neither ECL 23-2703 (3) nor 23-2711 (3) applies, Supreme Court's judgment should be affirmed on this ground.
Given this determination, I must reach petitioners' remaining contentions. To that end, I also find that Supreme Court correctly held that the decision of the Administrative Law Judge (hereinafter ALJ) to deny the 2014 application was not binding relative to the instant permit application. "A decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reasons for reaching a different result on essentially the same facts is arbitrary and capricious" (Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 93 [2001] [internal quotation marks, brackets and citations omitted]). Here, among the multiple differences between the applications, the 2014 application before the ALJ sought both a vertical and horizontal mining expansion while the 2018 application, which is subject to the permit at issue, involved solely a vertical expansion.[FN4]
Accordingly, the ALJ's prior decision was not final and binding since it could not have logically reached a "definitive position on the issue that inflicts an actual, concrete injury" (Matter of Essex County v Zagata, 91 NY2d 447, 453 [1998] [internal quotation marks and citations omitted]), namely, whether ECL 23-2703 (3) or 23-2711 (3) was triggered by the vertical expansion uncoupled from the horizontal expansion also sought in 2014. Thus, the ALJ's prior decision on the 2014 modification application "did not constitute a precedent from which the [ALJ] was required to explain a departure" (Matter of Davydov v Mammina, 97 AD3d 678, 679-680 [2012] [internal quotation marks and citation omitted]; see Matter of Iskalo 5000 Main LLC v Town of Amherst Indus. Dev. Agency, 147 AD3d 1414, 1416 [2017], lv denied 29 NY3d 919 [2017]). Moreover, because no final decision on the 2014 permit application had been entered by the ALJ — rather, the matter had been adjourned and not appealed to the Commissioner of Environmental Conservation — no precedential value resulted therefrom (see generally Matter of Circle T Sterling, LLC v Town of Sterling Zoning Bd. of Appeals, 187 AD3d 1542, 1543-1544 [2020]; Matter of Harry's Nurses Registry, Inc. [Commissioner of Labor], 171 AD3d 1410, 1411-1412 [2019], lv denied 34 NY3d 907 [2020]).
It is also my opinion that Supreme Court properly relied upon the affidavit of Catherine Dickert in reaching its decision. A respondent may submit supporting affidavits with an answer in a CPLR article 78 proceeding (see CPLR 7804 [c]; see also CPLR 4520) to allow the court "to both discern the rationale [*8]for the administrative action taken and undertake intelligent appellate review thereof" (Matter of Molloy v New York State Workers' Compensation Bd., 146 AD3d 1133, 1134 [2017] [internal quotation marks and citation omitted]). Nevertheless, such affidavits must be "furnished by individuals having firsthand knowledge of the decision-making process" (id. at 1134 [internal quotation marks and citations omitted]). Here, Dickert, who serves as the supervising official within the Division of Mineral Resources, was authorized to supply an affidavit explaining the rationale for the action of DEC as to issuing the relevant permit herein (see CPLR 4520, 7804 [c]). Moreover, the affidavit itself and the administrative record demonstrate that Dickert had personal knowledge of the policies at issue herein and, further, was directly responsible for those issuing permits (see 6 NYCRR 550.2; Matter of Molloy v New York State Workers' Compensation Bd., 146 AD3d at 1134; Matter of Friends of Hammondsport v Village of Hammondsport Planning Bd., 11 AD3d 1021, 1022 [2004]).
Finally, I find that Supreme Court correctly determined that DEC met its obligations under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) by taking the requisite hard look at the potential environmental impacts of the renewal. "Judicial review of an agency determination under SEQRA is limited to whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination. In conducting its review, this Court may not substitute its judgment for that of the lead agency, and may annul its decision only if it is arbitrary, capricious or unsupported by the evidence" (Matter of Troy Sand & Gravel Co., Inc. v Town of Sand Lake, 185 AD3d 1306, 1310 [2020] [internal quotation marks and citations omitted], appeal dismissed 36 NY3d 943 [2020], lvs denied ___ NY3d ___ [May 6, 2021]; see Matter of Van Dyk v Town of Greenfield Planning Bd., 190 AD3d 1048, 1049 [2021]). "While the judicial review must be genuine, the agency's substantive obligations under SEQRA must be viewed in light of a rule of reason[,] and the degree of detail with which each environmental factor must be discussed will necessarily vary and depend on the nature of the action under consideration" (Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 688 [1996] [internal quotation marks and citation omitted]). "A degree of finality and stability is properly created once a permitted activity has successfully met the initial SEQRA requirements. In the absence of a material change in conditions or a violation of the terms of a permit, a renewal should be granted without undue burdens imposed upon the applicant" (Matter of Village of Hudson Falls v New York State Dept. of Envtl. Conservation, 158 AD2d 24, 30 [1990] [citations omitted], affd 77 NY2d 983 [1991]; see Matter of Atlantic Cement Co. v Williams, [*9]129 AD2d 84, 88 [1987]).
In support of its 2018 renewal application, Sand Land submitted its predecessor's application from the initial permit application in 1980, as well as the permit issued thereto in 1985. Further, Sand Land submitted the certificate of occupancy issued in 2011 by the Town, as well as the approved site plan and permit that had been issued to Sand Land in 2013. Sand Land also submitted the modification application from 2014, the negative declaration that had been issued thereto, a letter from the Town as to this application detailing the applicable zoning ordinance and DEC's denial of this application. Additionally, the administrative record contains a report completed by the Suffolk County Department of Health as to the effect that the subject mine had on the groundwater in the area and an assessment of this report, which detailed that the "conclusory statements" contained therein "are not supportable and are in fact disproven by [the] on-site investigation."
In addition to the 2018 renewal application itself, the permit issued to Sand Land and the negative declaration, the administrative record contains the ALJ's ruling on the 2014 application to modify Sand Land's permit as well as a February 2019 settlement agreement entered into between Sand Land and DEC. Further, the administrative record contains the Mined Land Use Plan completed in 2019 on behalf of Sand Land related to the instant renewal permit application and the full environmental assessment related to same. Notably, as to the issuance of this permit, DEC received a multitude of comments that were considered by DEC and responded thereto. Through the public commenting period, DEC received various affidavits and related scientific materials.
Given the extensive administrative record, DEC satisfied its requirements under SEQRA and took the requisite hard look at the relevant areas of environmental concern (see Matter of Van Dyk v Town of Greenfield Planning Bd., 190 AD3d at 1050; Matter of Town of Waterford v New York State Dept. of Envtl. Conservation, 187 AD3d 1437, 1443 [2020]). Notably, a full environmental assessment was conducted, which established that no threat was posed to groundwater. Further, the groundwater study upon which petitioners rely, as well as the assessment that calls into question the validity of this report, were included in the administrative record. Finally, given the nature of the environmental impact herein, specifically that such action ensures reclamation of the entire mined area, the issuance of the negative declaration was not arbitrary and capricious (see generally Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d at 690). "The mere fact that petitioners' concerns regarding certain aspects of the project were not resolved in their favor does not mean that DEC failed to discharge its statutory obligations under SEQRA" (Matter of Save Easton Envt. v Marsh, 234 AD2d 616, 618 [1996], lv denied 90 NY2d 802 [1997]). [*10]I have reviewed petitioners' remaining contentions and find them to be without merit. Accordingly, I would affirm the judgment of Supreme Court.
ORDERED that the order is affirmed, without costs.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the petition; petition granted and determinations of respondent Department of Environmental Conservation granting certain Mine Land Reclamation permits annulled; and, as so modified, affirmed.



Footnotes

Footnote 1:"Permittee" is defined as "any person who holds a valid mining permit from the department for the boundaries of the land identified in the mined land-use plan" (ECL 23-2705 [11]).

Footnote 2:A "stump dump" is a landfill site consisting of wood waste, such as tree stumps.

Footnote 3:It is undisputed that Suffolk County, the location of the Sand Land mine, is an area with a population of over one million that draws its primary drinking water from a sole source aquifer.

Footnote 4:"Reclamation" is "the conditioning of the affected land to make it suitable for any productive use" (6 NYCRR 420.1 [q]).

Footnote 5:Fred W. Thiele Jr. was also a named petitioner but Supreme Court found that he lacked standing. This issue is not being challenged on the appeal.

Footnote 6:Although Matter of Syracuse Aggregate Corp. v Weise (51 NY2d 278 [1980]) recognizes that "quarrying contemplates the excavation and sale of the corpus of the land itself" and "constitutes the use of land as a diminishing asset" (id. at 285), the case at bar is easily distinguishable because Sand Land's mine is located in an area with a population of over one million reliant on a sole source aquifer.

Footnote 1:Although the majority distinguishes Matter of Syracuse Aggregate Corp. v Weise (supra) because the mine at issue in that case was not located in an area covered by ECL 23-2703 (3), the statute neither overrules nor even addresses these well-settled and constitutionally protected property rights.

Footnote 2:There are six other mines operating within the Town under prior nonconforming use certificates.

Footnote 3:In their brief, the amici inadvertently make this point by noting that different local zoning laws, such as those of the Towns of East Hampton and Riverhead in Suffolk County, specifically limit expansion or changes to nonconforming uses.

Footnote 4:Other than the difference in the expansion sought, the applications also differed in a number of significant ways, including that the 2014 application provided for further processing of vegetative organic waste materials and the continued use of the part 360 registration (see 6 NYCRR 360.16), while the later permit called for quarterly groundwater testing, and included an agreement never to go below 120 feet above mean sea level and limiting the current life of the mine for no more than eight years.